James REEVES, et al.,
Plaintiffs-Appellants,

James A. Harrell, James B. Dean, Jr.,
and others,
Plaintiffs-Intervenors-Appellees,

v.

Ray WILKES, et al.,
Defendants-Appellees.

No. 84–8022.

United States Court of Appeals,
Eleventh Circuit.

March 8, 1985.

Rehearing and Rehearing En Banc
Denied April 15, 1985.

Robert E. Steele, Jr., Macon, Ga., for plaintiffs-appellants.

O. Hale Almand, Jr., Macon, Ga., for Wilkes and Civ. Ser.

Carey P. DeDeyn, Thomas M. Byrne, Atlanta, Ga., Manley F. Brown, Macon, Ga., for intervenors.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this employment discrimination case we must determine whether the district court erred in allowing intervention several years after entry of a consent decree and implementation of a remedial plan. Finding error, we reverse.

On March 24, 1978, James Reeves, a black male employed as a deputy sheriff in the Bibb County Sheriff's Department, commenced this litigation. On behalf of himself and all black deputy sheriffs then employed by the Bibb County Sheriff's Department and a class composed of all past, present, and future black applicants for employment, Reeves alleged racially discriminatory practices in hiring, job assignments, and promotions within the sheriff's department. The lawsuit named Sheriff Wilkes, but did not name deputies or allege that white deputies participated in or were responsible for any of the acts of discrimination.

During litigation, the parties voluntarily negotiated and entered into a "Stipulation for Settlement," which included a proposed "Consent Decree" to resolve all issues raised in the complaint. On May 24, 1979, the district court provisionally approved the stipulation and consent decree and scheduled a hearing on the fairness and reasonableness of the proposed settlement. On June 18, 1979, the district court approved the consent decree and entered a formal order. White deputies did not participate in the June 18 hearing; they were not given formal notice of the hearing or copies of the consent decree.

Among other things, the consent decree established certain mandatory racial quotas for hiring and promotion within the Bibb County Sheriff's Department. For hiring, the decree required that 50 percent of all entry level vacancies for deputy sheriff positions be filled by black applicants until such time as 40 black deputies were employed. Equal promotion policies were required, but unlike the hiring provision, the promotion section of the consent decree established no time limit or numerical cutoff goal for the period of its operation. The promotion provision, part VIII, paragraph 12, which is central to this lawsuit, provides:

PART VIII—AFFIRMATIVE ACTION—PROMOTIONAL GOALS

12. A part of the objective of this order is to achieve a work force in which the promotion of black employees, is equal, (a) by job classification, (b) by department, and (c) by rate of pay. In furtherance of this promotion goal, during the term of this order, defendants shall adopt the promotion goals referred to below:

a. All personnel in the sheriff's department will be made aware of the requirements for promotion to their next highest position.

b. At least semi-annually personnel eligible for promotion will be notified.

c. Each year at least fifty percent (50%) of the promotions will be blacks who have met the requirements for promotion to their next highest position.

d. This system is to be followed until the court shall determine that the defendants have complied in good faith with this order and the requirements of federal laws relating to employment practices.[1]

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The promotion provision further provides:
    13. At the time the person or commission makes a promotion decision to fill a vacancy, he and/or they shall make a written record of every person considered and shall state why the vacancy was not awarded or was awarded to each such person considered. The original

Pursuant to the decree, the Sheriff was required to file with the court, under seal, detailed periodic reports on the hiring, promotion, and transfer activities within the department. The decree also gave the district court continuing jurisdiction over the case for enforcement purposes and gave defendants the right to move for dissolution of the decree upon a showing of good faith compliance.

On February 17, 1982, James A. Harrell and James B. Dean, Jr., white deputies, filed a motion to intervene in this litigation as party plaintiffs. Harrell and Dean sought intervention requesting that the court discontinue the promotion provisions. They alleged that the promotion quota provision was discriminating against them and adversely impacting their rights and interests and those of other white deputies under the Fourteenth Amendment to the United States Constitution and 42 U.S.C.A. §§ 1981 and 1983 (West 1981). They did not make a collateral attack upon the legality of the decree, nor seek to review prior promotion decisions made under the decree. The court granted intervention. Subsequently, on June 15, 1983, the intervenors filed their motion to dissolve or modify the promotion provision of the consent decree, contending that "good faith" had been established and that the remedial purpose sought to be accomplished by the provision had been served.

On August 9, 1983, the district court held an evidentiary hearing on the intervenors' motion. On December 9, 1983, the district court granted the intervenors' motion and dissolved the promotion provision, part VII, paragraph 12. The only issue we address is whether the district court erred in granting the motion to intervene.

### Discussion

Reeves contends that the motion to intervene was untimely. Leave for permissive intervention is governed by Fed.R. Civ.P. 24(b) which provides:

(b) Permissive Intervention. Upon *timely* application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question or law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. [Emphasis added.]

The question whether an application for intervention is timely is largely committed to the district court's discretion, and its determination will not be overturned on appeal absent an abuse of discretion. *NAACP v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *United States v. Jefferson County*, 720 F.2d 1511 (11th Cir.1983).

The standards for analyzing the timeliness of an application for intervention are set forth in *Stallworth v. Monsanto*, 558 F.2d 257 (5th Cir.1977). In *Stallworth*, nonunion white employees sought intervention in a civil rights case instituted by black employees claiming that remedial provisions of a consent order entered by a district court unnecessarily deprived white employees of their seniority rights. On appeal, the appellate court reversed the district court's order denying intervention as untimely. The four factors considered in assessing timeliness included: (1) the length of time during which the intervenor actually knew or reasonably should have

---

of that report shall be kept in the Personnel Office.

14. Anything herein notwithstanding, Defendants shall not be required to violate Title VII or any other laws mandating equal employment opportunity in the implementation of this section of the Decree.

known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would be intervenor may suffer if his petition for leave to intervene is denied; (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Stallworth*, 558 F.2d 257.

Recently, in *United States v. Jefferson Co.*, 720 F.2d 1511 (11th Cir.1983), we again addressed the issue of timeliness of intervention to curtail the application of a consent decree. Applying the *Stallworth* test, we held that the district court properly denied the motion to intervene as untimely. In *Jefferson Co.*, consent decrees incorporated affirmative action remedies in hiring and promotion policies of the City of Birmingham, Alabama. Seven white members of the Birmingham Firefighters Association (BFA) moved to intervene; the district court denied their motion as untimely. Similarly, in this case, for reasons discussed below, we find Harrell and Dean's motion to intervene untimely.

### Factor 1

■ Harrell and Dean contend that their motion was timely because they filed it as soon as they discovered that they might be adversely affected by the continued compliance with the consent decree. The intervenors argue that they did not appreciate the potential adverse impact of the consent decree at its inception, nor were they provided notice of the decree's implementation or terms. The intervenors insist that they do not seek to undo the previous accomplishments attained under the decree or to substantially alter its application as a whole. Rather, they contend that the indefinite duration of the promotion provision has or will continue to unfairly affect their interests.

The first factor of the *Stallworth* test focuses on what the would be intervenor actually knew or reasonably should have known regarding his interest in the case before he petitioned for leave to intervene. The record reveals that throughout the pendency of Reeves's suit, two local newspapers, The Macon Telegraph and The Macon News, provided continuous coverage of the case's development. The articles reported the case as a class action challenging race discrimination in hirings and promotions.[2] On June 19, 1979, the day after the consent decree had been implemented, The Macon Telegraph printed an article, "Bibb Sheriff's Department Plan OK'd," which generally discussed the decree's intent in certain provisions. Specifically, the article stated, "the proposal about to become law calls for the hiring of one black

2. Publication of local newspaper articles included:

1. "Sheriff Denies Racial Bias," The Macon Telegraph, June 7, 1978.
2. "Class Suit Certified by Judge," The Macon Telegraph, November 18, 1978.
3. "Sheriff Defends Tests," The Macon Telegraph, November ____, 1978.
4. "Bibb Sheriff Hiring Tests Challenged," The Macon Telegraph, November 19, 1978.
5. "Owens Wants to Speed Sheriff's Test Hearing," The Macon Telegraph, December 6, 1978.
6. "County Sheriff Won't End Tests," The Macon Telegraph, December 7, 1978.
7. "The Hiring Exam is Unfair, Expert Says," The Macon Telegraph, December 7, 1978.
8. "Judge Questions Testing Schedule," The Macon News, January 9, 1979.
9. "Bibb Sheriff Must Halt Test Program," The Macon Telegraph, January 10, 1979.
10. "Court Orders Testing Halt," The Macon News, January 10, 1979.
11. "Jim Reeves: 'I'll Compete Against Anyone,'" The Macon Telegraph, January 16, 1979.
12. "Sheriff's Testing Talks Broken Down—Lawyer," The Macon News, March 22, 1979.
13. "Sheriff, Deputy Reach Agreement in Hiring Bias Suit," The Macon News, May 25, 1979.
14. "Bibb Sheriff Hiring Plan Agreed On," The Macon Telegraph, June 19, 1979.
15. "Bibb Sheriff's Department Plan Ok'd," The Macon Telegraph, June 19, 1979.
16. "Wilkes: Deputies Hurt by Settlement," The Macon News, October 23, 1981.

for every white until the department has a total of 40 black employees.... The one-to-one ratio also applies to promotions and assignments to road duty. The promotion system will be in effect indefinitely." Despite the local news coverage of the case, Harrell and Dean expressed no recollection of ever reading the local newspaper articles. Yet, they readily admit that they pay particularly close attention to issues involving the sheriff's department. Dean stated that it was not until several months after the consent order had been entered that he realized Reeves's suit did not deal with Reeves's attempt to recover the use of a patrol car;[3] he then obtained a copy of the decree.

Subsequently, on October 23, 1981, The Macon News printed an article, "Wilkes: Deputies Hurt by Settlement," in which Sheriff Wilkes admitted that deputies are being hurt by the department's 1979 racial desegregation settlement. Wilkes was quoted as saying, "We're hurting some men who have excellent records." Also, the article quoted Leo Wright, Bibb County personnel director, as saying, "The one-on-one requirement has slowed the promotions process."

Nevertheless, it was not until February 17, 1982, two years and eight months after entry of the consent decree, that Harrell and Dean filed their motion to intervene. We strain to understand how two deputies informed about current events affecting the sheriff's office would not have foreseen potential relevance of the decree's promotional provisions to their interests before two years and eight months had passed. We, of course, recognize that when the intervenors first became aware of the pendency of the case is not alone dispositive of the timeliness issue. In this case, however, numerous articles appeared in the local newspaper discussing the decree's intent in terms of hiring and promotional provisions. Also, the intervenors recalled some general discussion among fellow deputies about Reeves's suit. Similarly, the firefighters in *Jefferson County* recognized at an early stage in the proceedings that the suit may adversely affect them as evidenced by conversations regarding the City's strategy in defending the action. Yet, they failed to seek intervention; rather, the firefighters made an apparently ill-advised decision to rely on others to advance their interests.

Additionally, Harrell and Dean claim to have been adversely affected by enforcement of the consent decree's promotional provision; yet, the record reflects that Harrell did not apply for promotion between issuance of the consent decree and the filing of the motion for intervention. Dean was denied a promotion in 1980 because of lack of experience; all of the five black officers promoted at that time had been with the sheriff's office longer than Dean. We mention this although the first factor of the *Stallworth* test only requires an examination of what the intervenors actually knew or reasonably should have known regarding his interest in the case. While the intervenors may not have been provided formal notice of the decree's formulation or content, informed members of the community had ample opportunity to be apprised of the substance of Reeves's action. Consequently, the district court incorrectly applied the first factor in determining that the intervenors acted timely.

Furthermore, the intervenors were dilatory in filing their motion for dissolution or modification of the consent decree. Following the district court's granting of the motion to intervene on April 28, 1982, the intervenors filed a complaint on May 7, 1982. Subsequently, the defendants filed answers to the complaint on May 26, 1982, and June 21, 1982; one year later, on June

---

**3.** Testimony from Dean's deposition:

Q. I'm trying to find out ... when you discovered through conversation that James Reeves didn't file a suit so he could get a car.

A. It was some time, you know, after that —I'm sure—after the order was filed that—

like I say, I can't pinpoint the time period.... As soon as I was aware of what was happening or what had happened—that's when I felt like that I needed to pursue it since it would affect me.

15, 1983, intervenors filed their motion for dissolution or modification of the consent decree. Throughout their involvement in this case, the intervenors have procrastinated and delayed in asserting their interests.

*Factor 2*

■■■ Under the second factor of the timeliness test, the district court is required to consider the extent of the prejudice that the existing parties to the litigation may suffer as a result of the intervenors' failure to apply for intervention as soon as they actually knew or reasonably should have known of their interest in the case. *Stallworth*, 558 F.2d at 265. Several months after the decree had been issued, the intervenors began to suspect a potential adverse effect. Articles appearing in the local newspapers between the date of the decree's inception and the filing date of the motion to intervene described the decree's provisions and effect on the department.

In this case, if intervention is allowed, time and effort expended in formulating the settlement to remedy past discrimination will be for naught. The decree's remedial plan was designed to be enforced over time; compliance with the decree is monitored by the district court. Likewise, in *Jefferson County*, the court found that to allow intervention after two trials and a long complex negotiation process would have prejudiced the existing parties. The firefighters knew of their interest prior to the first trial.

Pursuant to the promotion provision, the intervenors argue that the defendants' good faith compliance allowed the district court to dissolve the provision. The intervenors assert that the sheriff's department has demonstrated good faith compliance by promoting eight qualified black and eight qualified white deputies between July, 1979, and April, 1983. Yet, the process

contemplated is incomplete because the positions of major and captain have not been proportionally promoted; no blacks have reached these promotional levels or positions.[4] This fact alone is insufficient to demand that the provision be terminated. Dissolution of the promotion clause now would frustrate the decree's intent. The district court misapplied the *Stallworth* test in analyzing the second consideration.

*Factor 3*

■■■ The third factor of the test required the court to determine whether the intervenors would be prejudiced if denied intervention. "Where the movant has no identity of interest with a party and thus could not be bound, or where his interest is identical with the party and consequently he is adequately represented, we would find no prejudice sufficient to give weight to the third factor." *Jefferson County*, 720 F.2d at 1517. By definition, a consent decree only binds those who consent, either expressly or impliedly. *Jefferson County*, 720 F.2d at 1518 n. 19. While the intervenors' interest may not have been adequately represented by an existing party in the original litigation, the deputies could alternatively institute an independent lawsuit and assert the specific violations of their rights. "The consent decree would only become an issue if the defendant attempted to justify its conduct by saying that it was mandated by consent decree." *Jefferson County*, 720 F.2d at 1518. "We do not preclude an action having a burden, financial or otherwise, on a consent decree as an 'impermissible collateral attack' to the extent that it deprives a non-party to the decree of his day in court to assert the violation of his civil rights." *Jefferson County*, 720 F.2d at 1518. "The burdens of cost and delay the would be intervenor would suffer if required to bring a future lawsuit do not constitute prejudice under the third *Stallworth* factor. He would have those burdens at any time he sought

---

**4.** Reeves, however, may have conceded some good faith compliance with the decree because he was qualified for captain on March 29, 1983; he was denied promotion because of a previous

disciplinary action; and yet, he did not challenge the department's failure to promote him until the intervenors sought to dissolve the promotional provision on June 15, 1983.

to enforce his rights in court." *Jefferson County*, 720 F.2d at 1517 n. 13. Furthermore, the promotion provision in this case provides that "anything herein notwithstanding, defendants shall not be required to violate Title VII or any other laws mandating equal employment opportunity in the implementation of this section of the decree." Consequently, because we find that the intervenors were not prejudiced, the district court was not justified in allowing intervention.

### Factor 4

Finally, under the fourth timeliness factor, the intervenors have advanced no compelling unique justification mandating a determination that the application was timely.

Considering the four-part test articulated in *Stallworth*, and again in *Jefferson County*, we find that the district court misapplied the criteria in allowing intervention and thus, abused his discretion. Because intervention was improperly granted, we decline to address other issues. Accordingly, we reverse the decision of the district court.

**REVERSED.**