782 F.2d 956
 40 Fair Empl.Prac.Cas. 255,
39 Empl. Prac. Dec. P 36,029, 54 USLW 2447,
3 Fed.R.Serv.3d 1533
 Michael HOWARD, et al., on behalf of themselves and all
others similarly situated, Plaintiffs-Appellants,
v.
John L. McLUCAS, et al., Defendants-Appellees,
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, Plaintiff-Appellee,
v.
John C. STETSON, et al., Defendants-Appellees,
Robert Poss, et al., Movants-Appellants.
 No. 84-8999.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 20, 1986.
 
 Edward T.M. Garland, Austin E. Catts, Robin N. Loeb, Charles A. Shanor, Atlanta, Ga., for Poss, et al.
 James W. Howard, Atlanta, Ga., for Howard, et al.
 Peter Maier, John F. Cordes, Civil Div., Appellate Staff, Dept. of Justice, Washington, D.C., for McLucas, et al.
 Bill Lann Lee, Center for Law in the Public Interest, Los Angeles, Cal., for plaintiff class of black employees.
 Appeals from the United States District Court for the Middle District of Georgia.
 Before HILL and CLARK, Circuit Judges, and HOBBS*, Chief District Judge.
 HILL, Circuit Judge:
 
 
 1
 This appeal arises out of an action filed in 1975 by black employees at Warner Robins Air Logistics Center ("Warner Robins") against the Secretary of the Air Force and others, seeking broad injunctive and monetary relief to redress alleged discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000e et seq.).FACTS[1]
 
 
 2
 In 1976, the district court certified a class of "all past, present, and future black employees" at Warner Robins. Plaintiffs' original retained counsel, Bernice Turner Brooks, moved for withdrawal of class co-counsel, the NAACP Legal Defense and Education Fund, Inc. (the "Legal Defense Fund"), in 1980. The district court conferred with the named plaintiffs in chambers to determine their choice of representation and later ordered Ms. Brooks withdrawn and the Legal Defense Fund substituted as lead counsel. After extensive discovery and pretrial proceedings, the parties reached a proposed settlement in June, 1984. Their proposed consent order and decree provided two types of remedial relief: $3.75 million in backpay to class members (with an additional $37,500 for the named plaintiffs) and a system of promotional relief whereby the defendants would promote qualified class members who were employed at Warner Robins during the 1972-1979 period[2] to 240 "target" positions. The district court gave preliminary approval to the consent decree on June 18, 1984; intervenor-appellants, white and non-black minority employees at Warner Robins, filed a motion to intervene on July 31, 1984. The district court denied the motion to intervene for lack of standing under Fed.R.Civ.P. 24 and untimeliness, 597 F.Supp. 1501. The court then entered final judgment approving the consent decree as modified following the fairness hearing.
 
 
 3
 This appeal involves claims by two different groups. Plaintiff-appellants, who are four of the named plaintiffs and twenty-seven other class members, appeal the order removing Ms. Turner and designating the Legal Defense Fund as lead counsel and also the consent decree, seeking an opt out procedure. Intervenor-appellants appeal from the order denying intervention and the consent order.[3]
 
 DISCUSSION
 
 4
 * Under Fed.R.Civ.P. 24(a), an applicant for intervention must claim "an interest relating to the property or transaction which is the subject of the action and ... that the disposition of the action may as a practical matter impair or impede his ability to protect that interest...." Intervenor-appellants claim standing to intervene because both remedial provisions of the consent decree will adversely affect their rights. We agree that intervenor-appellants clearly have no standing to challenge the backpay award. This award compensates class members for alleged past racial discrimination; it does not result in unequal compensation for current services on the basis of race. Intervenor-appellants thus have no particularized financial interest in the backpay award, only a general grievance insufficient to challenge a governmental expenditure. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-76, 485, 102 S.Ct. 752, 757-61, 765, 70 L.Ed.2d 700 (1981); Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 227-28, 94 S.Ct. 2925, 2935-36, 41 L.Ed.2d 706 (1974).
 
 
 5
 Intervenor-appellants have, however, alleged an interest that will be affected by the promotional remedy. The district court found they lacked standing to contest this remedy because they had no vested right to a promotion and the consent decree had a de minimus effect on their generalized expectation of consideration for promotions. A vested interest in one of the 240 target promotions is not required. Intervenor-appellants claim they are ineligible for these promotions solely on account of race because nondiscriminatee class members are eligible for the target positions. We hold this is sufficient to confer standing to intervene. See e.g., Vanguards of Cleveland v. City of Cleveland, 753 F.2d 479, 484 (6th Cir.) ("[R]egardless of how moderate the preference given to the plaintiff class, and how modest the detriment placed upon the intervenor class, there will be some detriment to the latter group."), cert. granted, --- U.S. ----, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985); Kirkland v. New York State Department of Correctional Services, 711 F.2d 1117, 1126 (2d Cir.1983) (non-minority third parties have sufficient interest to argue decree is unreasonable or unlawful), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984).
 
 II
 
 6
 The district court also found the motion to intervene was not timely. We review this decision under an "abuse of discretion" standard. Reeves v. Wilkes, 754 F.2d 965, 968 (11th Cir.1985).
 
 
 7
 The court must consider four factors to assess timeliness for either intervention of right or permissive intervention:
 
 
 8
 (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.
 
 
 9
 United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir.1983). The district court based its determination on the reasoning of Jefferson County. We conclude, however, that this case requires a different result.
 
 
 10
 Under the first factor, the district court incorrectly concluded intervenor-appellants acted unseasonably because they had reason to know of the suit since 1975. A court cannot impute knowledge that a person's interests are at stake from mere knowledge that an action is pending, "without appreciation of the potential adverse effect an adjudication of that action might have on one's interests...." Jefferson County, 720 F.2d at 1516. See also Stallworth v. Monsanto Co., 558 F.2d 257, 264-65 (5th Cir.1977). Similarly, we do not impute knowledge in the present case from the complaint's prayer for broad affirmative relief.
 
 
 11
 It is especially unrealistic to say that the whites should have known from the outset that any relief might be at their expense, and that it is only "a matter of degree" if the decree is unexpectedly costly to their interests. The essence of institutional litigation is that the remedy cannot be deduced from the defendant's liability; the remedy embodies discretionary policy choices about the future operation of an institution. The variety of remedial possibilities in any given case makes it difficult to foresee which remedies the court or the parties will actually select. Potential intervenors cannot very well judge whether their interests are in serious jeopardy until they know what particular remedies are being contemplated.
 
 
 12
 Schwarzschild, Public Law by Private Bargain: Title VII Consent Decrees and the Fairness of Negotiated Institutional Reform, 1984 Duke L.J. 887, 921. In Jefferson County, the would-be intervenors had been in close contact with the defendant employer regarding the suit, Jefferson County, 720 F.2d at 1516, but the record here does not show that intervenor-appellants had such contact. We will not require intervenor-appellants to have anticipated a promotional remedy that provides for promotions set aside for class members without a finding that the individual employees so promoted had been subject to discrimination. Intervenor-appellants filed their motion shortly after the proposed consent decree was announced, before the fairness hearing. We do not find the six week delay was dilatory. Cf. Reeves v. Wilkes, 754 F.2d 965, 970 (11th Cir.1985) (intervention sought two years and eight months after entry of consent decree was untimely). We hold intervenor-appellants satisfied the first factor.
 
 
 13
 As to the second factor, the district court found the existing parties would be prejudiced by intervention. Unlike the situation in Jefferson County, however, intervention in this case, would not prolong a "pattern of past discriminatory practices," Jefferson County, 720 F.2d at 1517, because Warner Robins changed its promotion rating system before the consent decree. The consent decree contains only remedies designed to correct past discrimination. Moreover, because we hold appellants have no standing to challenge the backpay award, intervention would affect only the promotional remedy. Although we recognize that this case has been pending a considerable time, any prejudice that might result from intervention can be minimized by allowing only limited conditional intervention. Likewise, limiting intervention to a challenge of the remedy only insofar as it restricts intervenor-appellants' promotional opportunities solely on account of race will protect against nullification of the entire settlement. Cf. Kirkland v. New York State Department of Correctional Services, 711 F.2d 1117, 1125-28 (2d Cir.1983) (granted conditional intervention to challenge race-conscious promotional remedies; no right to veto proposed compromises), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). More significantly, the district court failed to consider the potential prejudice to the defendant implicit in its suggestion that aggrieved white employees could bring individual reverse discrimination suits in lieu of intervention. In that event, the defendant employer would have to defend itself in multiple suits for conduct mandated by the consent decree. We conclude the parties would be prejudiced more substantially by denying intervention than by allowing it.
 
 
 14
 The third factor addresses the extent the applicant would be prejudiced if intervention is denied. The district court found intervenor-appellants were not prejudiced because they could bring reverse discrimination suits against the defendant employer. Although one whose interests are not represented in the decree may be allowed to bring a reverse discrimination action, Jefferson County, 720 F.2d at 1517-19, that alone does not negate prejudice. The central claim in any such suit would be an allegation that the race-conscious promotion of a class member violated the Constitution and Title VII. A defense based on the consent decree would raise the issue whether action mandated by the consent decree would be exempt from liability without affording non-black employees an opportunity to challenge the decree. Id. at 1518. Moreover, the burden multiple reverse discrimination suits would impose on judicial economy is an important consideration in determining whether intervention is appropriate. Cf. Stallworth v. Monsanto Co., 558 F.2d at 265.
 
 
 15
 Finally, intervenor-appellants raise an important question regarding the legality of the race-conscious promotional remedy that would be foreclosed in a separate reverse discrimination suit. Jefferson County, 720 F.2d at 1518. This is an unusual circumstance militating in favor of finding the intervention was timely. There are no such circumstances against intervention.
 
 
 16
 For the foregoing reasons, we conclude the district court abused its discretion in denying the motion to intervene. We therefore reverse the district court's order denying intervention and vacate that portion of the consent decree that mandates the promotional relief.
 
 
 17
 Intervenors are limited to challenging the portion of the remedy that reserves 240 target position promotional opportunities to class members. They have no standing to contest the existence of past discrimination or any other issue concerning the merits of the dispute and no standing to contest the backpay award or veto remedial measures in general. The only issue intervenors shall be permitted to raise on remand is their contention that white and non-black employees will not be considered for promotion to the 240 target positions on an equal basis with nondiscriminatee black employees solely on account of race.
 
 
 18
 The district court and the parties have been laboring with this case for over a decade.[4] It is in the best interests of the court and all the parties that this case, once apparently settled, be now resolved with the least delay consistent with this remand. Therefore, the district judge should limit discovery narrowly to the single issue which intervenors are permitted to address and set and enforce strict time limits for its accomplishment. To ensure that discovery and other necessary proceedings are accomplished as quickly and efficiently as possible, the district court should enjoin all parties to require good faith cooperation and impose sanctions upon any party obstructing prompt, efficient and complete discovery as ordered by the district court.
 
 
 19
 We recognize that all parts of the settlement are so interrelated that resolution of this issue on remand may substantially affect the parties' agreement to the settlement as a whole. Therefore, the district court should allow the original parties to reassess their agreement to any part of the consent decree after the issue presented by intervenors has been decided.
 
 III
 
 20
 We have examined the plaintiff-appellants' claims and find no abuse of discretion. None of the named plaintiffs objected to the district court's substitution of the Legal Defense Fund as lead class counsel; they told the district court they wanted the "representation which would best protect the merits of their claim." (R. 451-52). The district court concluded the Legal Defense Fund would best represent the class because of Ms. Brooks' distance and lack of resources, the court's concern that Ms. Brooks would not adequately represent absent class members, and because the Legal Defense Fund had carried the primary litigation burden. (R. 453-54). The district court acted reasonably within its power and duty to protect the interests of the class, including absent class members. In re Fine Paper Antitrust Litigation, 617 F.2d 22, 27 (3d Cir.1980). We also find no abuse of discretion in the district court's failure to include an opt out provision in the consent decree. Plaintiff-appellants did not seek an opt out provision at the fairness hearing, do not contest the fairness of the consent decree to the class, and do not allege claims unique to individual class members. The general rule is that members of a class certified under Fed.R.Civ.P. 23(b)(2) have no automatic right to opt out of the settlement. Holmes v. Continental Can Co., 706 F.2d 1144, 1153 (11th Cir.1983). We find this case does not present uniquely individualized or heterogenous interests entitling plaintiff-appellants to an opt out provision. Id. at 1159-60.
 
 
 21
 AFFIRMED in part; VACATED in part, and REMANDED for proceedings not inconsistent with this opinion.[5]
 
 CLARK, Circuit Judge, dissenting:
 
 22
 I cannot agree that the applicants for intervention ("intervenors") have demonstrated the interest (in intervention) and prejudice (if not allowed to intervene) required to be entitled to intervene under Fed.R.Civ.P. 24(a), let alone to persuade us that the district court abused its discretion in denying intervention.
 
 
 23
 The majority holds that the intervenors' allegation that "they are ineligible for these promotions solely on account of race because nondiscriminatee class members are eligible for the target positions ... is sufficient to confer standing to intervene." Majority Op., at 959. The majority requires no allegation or showing that intervenors would be eligible for the target promotions if they were not set aside for class members. The holding bases the right to intervene solely on a claim that the promotion remedy is illegal, unaccompanied by a claim of the "direct, substantial, legally protectible interest in the proceeding" that this circuit has heretofore required to support intervention. See, e.g., Athen Lumber Company, Inc. v. Federal Election Commission, 690 F.2d 1364, 1366 (11th Cir.1982).
 
 
 24
 What little information we have about the intervenors is contained in nine affidavits submitted to the district court after the Fairness Hearing on the consent decree. Appellees have convincingly refuted the claims set out in the affidavits that the intervenors would be eligible for the target promotions and have demonstrated that these intervenors would not be considered for the promotions they claim are to be denied them solely on account of race. The district court adopted in its Opinion and Order Granting Final Approval to the Amended Consent Decree (Record at 1539) the findings contained in appellees' "Joint Proposed Order Granting Final Approval to the Consent Decree." The court found that the intervenors would not be eligible for the target promotions because they are either less qualified than many class members or, although similarly qualified, ranked well below many class members on the register from which the promotions are made. Two of the intervenors aspire to positions that are not included among the target positions. Record at 1479-84. Thus, the district court found not merely that the intervenors have no vested right in the target promotions, but that they are not even eligible to compete for the target promotions.
 
 
 25
 I agree that the intervenors are not required to prove that they would actually receive target promotions if not for the promotion remedy. The Supreme Court has explained that the injury consisting in the denial of an opportunity to compete for a position simply because of race is sufficient to confer standing.[1] Regents of University of California v. Bakke, 438 U.S. 265, 281 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978). However, this holding does not relieve the intervenor of the burden of showing that he or she is eligible for a target position. See Doherty v. Rutgers School of Law-Newark, 651 F.2d 893, 899-902 (3d Cir.1981) (finding no standing in white applicant to challenge affirmative action in admissions where applicant did not meet criteria for acceptance to any law school seat); West Virginia Association of Community Health Centers, Inc., 734 F.2d 1570, 1576 (D.C.Cir.1984) (once applicant demonstrates eligibility, not necessary to shoulder additional burden of demonstrating certainty of receiving benefit to challenge its allocation); see also Preston v. Heckler, 734 F.2d 1359, 1365 (9th Cir.1984) (same). Obviously, an intervenor who is not eligible for any target position cannot claim to be injured by the promotion remedy or to have an interest in its legality. In not requiring intervenors to allege or show some realistic chance of priority in promotion to one of the allocated target positions, the majority allows any employee, no matter how far-fetched his or her chance of promotion, to challenge the promotion remedy.[2] This approach amounts to abandonment of the interest requirement for intervention.
 
 
 26
 The cases cited by the majority are of no help to intervenors' position. In Vanguards of Cleveland v. City of Cleveland, 753 F.2d 479 (6th Cir.), cert. granted sub nom. Local 93, International Association of Firefighters v. City of Cleveland, --- U.S. ----, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985), the union had already been granted intervention and represented a class of employees alleged to be aggrieved by a promotion remedy adopted by consent decree. The interest of the union members in intervention had thus already been established. There was no question that the promotion remedy operated to the detriment of some of the class members, so the court found the intervenors sufficiently aggrieved to challenge the legality of the consent decree. We have no way of knowing what evidence the union presented to support its motion for intervention or how the court would have ruled had there been no evidence of detriment to the intervenor class. Likewise, in Kirkland v. New York State Department of Correctional Services, 711 F.2d 1117 (2d Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984), the court was not faced with the issue of the sufficiency of the intervenors' interest to challenge the legality of the consent decree. Rather, the court was asked to determine whether the nature and extent of the intervenors' interest was sufficient to require that they be granted full intervention instead of the limited conditional intervention permitted by the district court. We know nothing about the extent to which the intervenors would suffer real injury from implementation of the remedy there at issue. Neither of the cases cited by the majority support the proposition advanced.
 
 
 27
 If the promotion remedy operates to the detriment of some non-black employees, none of these employees has come forward to challenge the decree. A party seeking to represent a class does not have standing to represent that class solely by virtue of alleged injury to unknown class members. The named plaintiff must independently " 'possess the same interest and suffer the same injury' as the class members." East Texas Motor Freight System, Inc. v. Rodriquez, 431 U.S. 395, 404, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (holding that plaintiffs who lacked qualifications to be hired as drivers suffered no injury from alleged discriminatory practices and therefore lacked standing to represent class of persons who did suffer injury) (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). A particularized nexus between the injury inflicted by the challenged action and the party must be demonstrated before the party will be allowed to proceed with the suit. The majority too readily permits those offended, though not injured, by affirmative action to interfere with a voluntary and limited effort to remedy past discrimination.
 
 
 28
 Inextricably intertwined with the majority's holding with respect to the intervenors' interest in the promotion remedy is an assumption that the intervenors' legal argument states a cause of action:Intervenor-appellants claim they are ineligible for these promotions solely on account of race because nondiscriminatee class members are eligible for the target positions. We hold this is sufficient to confer standing to intervene.
 
 
 29
 Majority Op., at 959 (emphasis added). Requiring no showing that the intervenors would be eligible for the targeted promotions if not for their race, the majority suggests that the fact that nondiscriminatees may participate in the promotion remedy confers an interest on the intervenors and would, if true, render the promotion remedy illegal.
 
 
 30
 Yet, under United Steelworkers v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), a voluntary affirmative action plan need not benefit only demonstrated victims of discrimination nor even be justified by a judicial finding of discrimination.[3] The legal interests of the intervenors are affected by the participation of nondiscriminatee class members in the promotion remedy only if Firefighters Local 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), is interpreted to limit court-approved consent decrees to those remedies that could be ordered by the court after trial. Under such an interpretation, the parties to the consent decree would have to show that the remedies provided therein will benefit only actual victims of discrimination. Only under Stotts does the issue of the victim-specificity of a consent decree remedy arise.
 
 
 31
 However, it is clearly the law of this circuit that Stotts does not limit the remedies available to parties to a consent decree any further than does the law on the legality of other voluntarily adopted affirmative action measures. Turner v. Orr, 759 F.2d 817, 823-26 (11th Cir.1985) (the legal basis of Stotts "does not limit the remedies to which parties may voluntarily agree under a consent judgment"). Thus, the fact that nondiscriminatee blacks may be benefited by the promotion remedy does not affect any legal interest of the intervenors if the remedy does not violate Weber. A non-black employee does not, as a matter of law, suffer discrimination simply because nondiscriminatees participate in the promotion remedy. Although their claim is foreclosed by Turner, and has already been decided against intervenors by the district court, the majority remands the case for assessment of the Stotts claim.
 
 
 32
 I must also disagree with the majority's conclusion that the intervenors will be prejudiced if intervention is denied.[4] This conclusion is completely contrary to the district court's clear findings of fact. Record at 1530. The district court found that intervenors would be allowed to bring an action to challenge any denials of promotion resulting from implementation of the consent decree and therefore are not prejudiced by denial of intervention. The majority's conclusion is contrary to the mandate in United States v. Jefferson County, 720 F.2d 1511 (11th Cir.1983). In that case, we stated that "where the movant [for intervention] has no identity of interest with a party and thus could not be bound, ... we would find no prejudice sufficient to give weight to the third factor." Id. at 1517. We went on to indicate that non-black male employees could not be bound by a consent decree providing extensive remedies for discrimination against blacks and women in a lawsuit to which they were not party. We held that the district court was justified in finding that the non-black male employees would not be prejudiced by a denial of intervention. In so doing, we rejected the very reasoning through which the majority here appears[5] to find prejudice--that promotions mandated by a consent decree might be exempt from an independent challenge that they are discriminatory. The majority has not attempted to, and could not, distinguish the prejudice alleged in this case from that in Jefferson County, yet it rejects the district court's finding on this point in the face of controlling precedent to the contrary.[6]
 
 
 33
 Furthermore, the spectre of multiple individual law suits is simply not compelling. In the first place, as previously shown, intervenors have not managed to find any non-black employee with sufficient interest in the targeted promotions to make out a case of race discrimination; it is unlikely that the courts will be flooded with reverse discrimination suits. In the second place, nothing forecloses the intervenors from bringing a separate class action, rather than myriad individual suits, to challenge the promotion remedy. Intervenors claim that burdensome multiple litigation will result from denial of intervention is more like an idle threat than evidence of prejudice.
 
 
 34
 Furthermore, it is relevant to the determination whether intervenors would be prejudiced by denial of intervention to inquire whether they are likely to succeed on the merits of their challenge to the promotion remedy. These intervenors are so unlikely to prevail that I believe they could not be prejudiced by a denial of intervention. As already noted, their Stotts claim is foreclosed by Turner. A Weber claim that the non-black employees' interests are unnecessarily trammelled by the promotion remedy would fail because the intervenors have demonstrated no interest in the target promotions to be trammelled. Nor have they made any showing that the remedy is unnecessary or otherwise inconsistent with Weber. In fact, it is entirely consistent with Weber in that it does not require the discharge of non-black employees, does not create an absolute bar to the advancement of non-black employees, is designed merely to eliminate racial imbalance and is of limited duration. Weber, 443 U.S. at 209, 99 S.Ct. at 2730.
 
 
 35
 The majority thus vacates a promotion remedy that has already been half implemented[7] and remands for a determination whether the promotion remedy discriminates against non-black employees on account of race because it allegedly benefits nondiscriminatees--an assessment that the district court has already concluded in favor of appellees and that is not due to be reversed under the current state of the law. This result throws implementation of the consent decree into question and unnecessarily wastes the time and resources of the parties and the district court. Because the intervenors have demonstrated no interest that is adversely affected by the promotion remedy and would not be prejudiced if denied the opportunity to intervene,[8] I must respectfully dissent from the majority's decision to reverse the district court's order denying intervention.
 
 
 
 *
 Honorable Truman M. Hobbs, Chief U.S. District Judge for the Middle District of Alabama, sitting by designation
 
 
 [1]
 The issues in this appeal do not concern the merits of plaintiffs' discrimination claim. We therefore recite only those facts relevant to the issues before us
 
 
 [2]
 The proposed consent order and decree originally included black employees employed by Warner Robins from March 24, 1972 to the date the court approved the settlement. The parties amended this provision to limit the target promotions to class members hired before January 1, 1980
 
 
 [3]
 We note provisional jurisdiction to review the denial of intervention under this circuit's "anomalous rule." If we find the district court's decision was correct, we must dismiss for lack of jurisdiction; if we find the district court abused its discretion, we retain jurisdiction and must reverse. United States v. Jefferson County, 720 F.2d 1511, 1515 (11th Cir.1983); Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977)
 
 
 [4]
 Litigation time may well have mooted the issue on which remand is ordered. Though sought, stay of the consent was not granted. The dissent which has now been prepared, refers to an implementation report indicating that much of the decree had been implemented in July. Of course, it was necessary for both the majority and dissenting opinions to be prepared before the judgment of this court could be made effective. The district court will want to inquire into mootness before proceeding further
 
 
 [5]
 Merely because we are remanding the case does not imply that we believe the proposed intervenors should prevail. We hold merely that before the district court orders implementation of the consent decree, the proposed intervenors should be allowed to intervene. Specifically, we do not pass upon the constitutionality of the promotional remedy. If it is constitutional, it is not, nevertheless, demanded. If implementation would have an adverse impact upon the promotion expectations of intervenors, they should be granted the opportunity to demonstrate that and should be heard in opposition to these provisions
 
 
 [1]
 Standing to bring a lawsuit and interest to intervene appear to be related, but not necessarily identical, concepts. See generally 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1908 (1972 & Supp.1985). In this circuit, a would-be intervenor must claim a direct, substantial, legally-protectible interest to support a motion for intervention of right. "In essence, the intervenor must be at least a real party in interest...." Athens Lumber Company, Inc., 690 F.2d at 1366. Thus, the would-be intervenor must demonstrate at least the interest required to assert standing to initiate a law suit. See id. (citing standing cases in the intervention context). Otherwise, we place the intervenor in a position to refuse consent without any demonstration of illegality on a lesser showing of interest than would be necessary to challenge the legality of the agreement in a separate proceeding. Because the potential prejudice to existing parties is so great, we should be careful to screen requests for intervention
 
 
 [2]
 Intervenors can claim they would be considered for the target promotions if not for the promotion remedy only because the computerized promotions system at Warner Robins screens all the employees to find those who are qualified to compete for a position. Even among those who are minimally qualified for a position chances of promotion may be slim because a particular employee may be ranked below hundreds, even thousands, of other qualified employees. See Record at 1479-84
 
 
 [3]
 In this case the district court found that the black employee class had made out an unrebutted prima facie case of discrimination. The employer does not admit liability
 
 
 [4]
 The majority discusses prejudice to the intervenors as one of the factors to be considered in assessing the timeliness of the motion for intervention. Under Fed.R.Civ.P. 24(a) prejudice is an independent factor to be considered in deciding whether intervention of right is called for. Even if their motion for intervention was otherwise timely, the non-black employees have not shown that the consent decree will "impair or impede" their ability to protect their interests as required by Rule 24(a)
 
 
 [5]
 The majority implies, but never states, that the intervenors would be prejudiced were intervention denied
 
 
 [6]
 Upon reviewing Jefferson County, the district court found that:
 This case demands the same result. ... The present parties would be substantially prejudiced by movants' intervention at this stage. Movants, on the other hand, would not be prejudiced by denial of intervention. They may commence a separate lawsuit if they so desire (assuming subsequent events result in a more concrete demonstration of standing), as they are not precluded by the Consent Decree. Moreover, they were allowed to be present and cross-examine witnesses at the fairness hearing held on August 9, 1984. Their objections have been filed and will be considered by the court. There are no unusual circumstances demanding intervention. Indeed, the court perceives the fact that the Decree affects only 6 1/2% of all promotions as a circumstance militating against intervention. As in Jefferson County, movants' motion to intervene is neither timely nor necessary for the preservation of movants' asserted rights.
 Record at 1530-31.
 
 
 [7]
 According to an implementation report filed with the district court on July 18, 1985, 114 of the 240 target promotions have been filled
 
 
 [8]
 Although I have focused on only two elements of the intervention issue, I am also troubled by the balance of the majority's discussion of the timeliness issue. I wonder whether intervenors--who surely ought to have suspected that the eventual outcome of this case might have some adverse effect on their interests--should not share some of the burden of keeping apprised of the progress of the law suit. It is highly prejudicial to the parties to allow the intervenors to make their motion whenever they happen to learn of the adverse effect, even after a year of complex negotiations, without any consideration of the prejudice to the existing parties from intervention
 Under the second factor in timeliness, prejudice to existing parties from undue delay, the majority considers the burden on the employer if it must defend multiple law suits because intervention is denied. Aside from the fact that such a burden will likely not materialize, it is not for the court to weigh the prejudice to the existing parties from denial of intervention. We may assume that they perform their own calculations in deciding whether to enter into and defend a consent decree.
 Finally, the majority states that the "intervenor-appellants raise an important question regarding the legality of the race-conscious promotions remedy that would be foreclosed in a separate reverse discrimination suit. This is an unusual circumstance militating in favor of [intervention]." If the point here is that the intervenors will be prejudiced by denial of intervention, that factor has already been weighed in favor of intervention and should not be double-counted. If the point is that an important question of law ought to be addressed for some reason other than its importance to the party raising it, I reiterate that we are not to attribute significance to the party's legal claim absent some evidence of the party's interest in it. In any case, the majority's statement makes two fallacious assumptions: (1) that the legal question raised by intervenors is significant; (2) that the intervenors would be foreclosed from raising their legal question in an independent proceeding. I have rejected both these assumptions elsewhere in this opinion and will not repeat my position. However, it should be noted that Jefferson County does not support the proposition for which it is cited at this juncture in the majority's opinion. Jefferson County states only that a non-party would not be allowed to re-litigate the merits of the consent decree vis-a-vis the parties to it. That opinion does not find that the legality of a race-conscious remedy vis-a-vis non-parties would be foreclosed in a separate reverse discrimination suit.