**UNITED STATES of America, Plaintiff,**

v.

**COFFEE COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civ. A. No. 679.**

United States District Court, S.D. Georgia, Waycross Division.

Dec. 19, 1990.

James D. Hudson, Douglas, Ga., for plaintiffs-intervenors.

Polly Miller, U.S. Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff.

Sidney L. Cottingham, Douglas, Ga., for defendant Coffee County Bd. of Educ.

## ORDER

EDENFIELD, Chief Judge.

Some residents of Coffee County (the "movants") have moved to intervene in this case, which arises out the dust of a 1969 desegregation order entered by Judge Lawrence. If they are allowed to intervene, the movants will ask this Court to prevent the Coffee County School Board from reorganizing their school system. They complain that the proposed reorganization will upset the desegregation effort begun over twenty years ago. The parties, the Coffee County School Board ("school board" or "Board"), board members, and the United

States Department of Justice ("Justice Department" or "government"), oppose the motion to intervene. The parties claim that they adequately represent the interests of the movants.

On November 30, 1990, the Court held an evidentiary hearing. Although the parties and witnesses mentioned the merits of the proposed five-year plan in passing, that was not the focus of the hearing. Instead, the hearing focused on the narrow issue of whether the movants should be allowed to intervene.

After a careful review, the Court makes the following findings of fact and conclusions of law.[1] In accordance with these findings and conclusions, the motion for intervention is DENIED.

### FINDINGS OF FACT

■ On September 15, 1969, Judge Lawrence entered an order requiring desegregation of the Coffee County school system. The plan of desegregation originated with the school board itself, and H.E.W. agreed to the plan. Although the community resisted desegregation at first, the school board eventually implemented the Court-ordered plan. The Court took no further action in the case: it did not declare Coffee County a unitary school system, enter a final judgment, or dismiss the case. Thus, this Court retains jurisdiction over the case. *See Georgia State Conference of Branches of NAACP v. State of Georgia,* 775 F.2d 1403, 1413 (11th Cir.1985); *Pitts v. Freeman,* 755 F.2d 1423, 1426 (11th Cir. 1985); *Pate v. Dade County School Bd.,* 588 F.2d 501 (5th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979); *Lee v. Macon County Bd. of Educ.,* 584 F.2d 78 (5th Cir.1978).[2]

Over the years, the Board has modified the 1969 plan. For example, at one point an elementary school burned down, and the children met in another location temporarily while a new school was built. None of these modifications were approved by this Court. During this entire period, however, the Board submitted required statistical evidence about racial balance in the schools to the government. The Justice Department did not oppose any of the changes that the Board made to the system during these years.

In 1985, the Georgia General Assembly enacted the Quality Basic Education Act (QBE), which sets forth recommended base sizes for schools, which, if met, increase state funding for school districts. A number of Coffee County schools do not meet these recommended base sizes. For example, in the 1989–90 school year, Broxton and Nichols schools enrolled fewer high school students than recommended by the QBE. Because the school system has not met the QBE standards, the local community must fund some of the teaching positions at these schools.

After the Assembly enacted the QBE, the Coffee County School Board began to study ways to reorganize the school system to qualify for additional funding under the QBE. On February 1, 1990, the Board adopted a "Five Year Facilities Plan" (the "plan"). The plan provides for the consolidation of three high schools into a single high school location. Until the present academic year, high school students in Coffee County attended one of three high schools. During the 1990–1991 school year, all high school students attend one high school: Coffee High School, located in Douglas, Georgia. Under the proposed plan, however, a new high school facility for all students to attend would be constructed. In addition, the plan provides for consolidation of middle schools into two locations, and reorganization and rezoning of elementary grades.

A group of local citizens, represented by counsel for the movants, opposed the plan, arguing to the board that the plan was

---

1. To the extent that conclusions of law are identified as findings of fact they are adopted as conclusions of law. Similarly, to the extent that findings of fact are adopted as conclusions of law they are adopted as factual findings.

2. The Eleventh Circuit has adopted as binding precedent all decisions of the Former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

unwise for a number of policy reasons unrelated to desegregation. After failing to persuade the board to reconsider the plan, they appealed the decision of the local school board to the State Department of Education, which affirmed the board's decision on August 9, 1990.[3] No one raised the issue of desegregation during the state proceedings.

The school board filed a report on the plan with the Civil Rights Division of the United States Department of Justice on June 25, 1990. On August 13, 1990, the school board learned that local citizens had complained to the Department of Justice about the consolidation of the high schools. The Department of Justice indicated that it must review any modifications to the 1969 desegregation plan, and that subsequently this Court must approve those modifications. It was at this point that many of the school board members first learned that the 1969 plan was still in effect. Although the local school board did not agree that changes needed Department of Justice and Court approval, the board submitted the plan for approval by the Department of Justice to avoid litigation.

The parties submitted a proposed consent order to this Court. The proposed order does not concern the entire plan, but consents to consolidation of the high schools and construction of the new high school facility. The school board does not intend to implement the other aspects of the plan until the 1991–1992 school year, at the earliest. For this reason, the Department of Justice wishes to review the plan in its entirety before deciding whether to object to it. The parties emphasize, therefore, that they do not ask the Court to consider at this time whether the plan as a whole has any adverse impact on desegregation. Furthermore, the Department of Justice would prefer to delay any hearing to determine whether the school system has achieved unitary status until a later date. The local school board agrees, and therefore it does not seek dismissal of this case.

The parties seek only approval of the high school consolidation.

## CONCLUSIONS OF LAW

■ For the movants to intervene, either as a matter of right or permissively, the movants' application must be timely. If it is, and the movants show that: (1) they claim an interest relating to the subject of the action; (2) disposition of the action may impede or impair their ability to protect that interest; *and* (3) existing parties do not adequately represent their interest, then they may intervene as a matter of right. Fed.R.Civ.P. 24(a)(2). Alternatively, if the application is timely, but the movants fail to show one of these factors required to intervene as a matter of right, the movants may seek the Court's permission to intervene. The Court may allow "permissive" intervention if (1) there is a common question of fact between their claim, *and* (2) the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.P. 24(b).

### A. Timeliness

■ Regardless of the theory of intervention, the Court may grant only timely motions to intervene. Timeliness is to be determined from all of the circumstances of the case. *NAACP v. New York*, 413 U.S. 345, 367, 93 S.Ct. 2591, 2603–04, 37 L.Ed.2d 648 (1973); *Reeves v. Wilkes*, 754 F.2d 965, 968 (11th Cir.1985). Courts consider four factors when judging the timeliness of a motion: (1) the length of time the movants knew or reasonably should have known of their interest in the case before they petitioned for leave to intervene, (2) the prejudice to existing parties caused by their failure to apply earlier, (3) the prejudice to the movants if the motion is denied, and (4) any unusual circumstances militating for or against a determination that the petition is untimely. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.1989); *Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir.1986).

---

**3.** Apparently the parties decided not to appeal the decision of the Department of Education to the superior court.

### 1. When Movants Should Have Known of Their Interest

■ Although the parties insist that the movants should have known of their interest in this case long ago, the movants actually learned of this case in August 1990. Although this case began in 1969, the new reorganization plan originated only several years ago. During the past few years, the board held public hearings on the matter and considered changes to the plan. Arguably, the interest in opposing this particular plan did not arise until the board formally adopted the plan in its final form in February 1990. . Even so, the movants did not file this motion until August, six months after the plan was adopted.[4]

Of course, a delay of six months does not render the motion untimely unless the movants *should have known* of their interest in the case during that time. The school board suggests that because this case is a matter of public record, the movants should have known of their interest in it as soon as their interest arose. At the evidentiary hearing, however, the Superintendent of the Coffee County Schools, Dr. Travis Ouzts, testified that although he knew of the desegregation plan all along, most of the Board members first learned of the plan when they read a copy of it in August 1990. The movants cannot be faulted for failing to learn of the case earlier when, as mentioned earlier, even some of the defendants knew nothing about it.

### 2. Prejudice to Existing Parties Caused by the Delay

■ Another factor to consider when determining timeliness is whether the delay has prejudiced the parties.[5] In this case, however, any prejudice comes from the parties' delay in filing the consent decree, not from the movants' delay in filing this motion. Because of the delay in filing the consent decree, the parties may have to defend and explain the plan after portions of it have gone into effect. Of course, if the motion had been filed in February, the parties may have submitted the consent order months ago, but the movants should not be charged with reminding the parties of their duties to this Court.

### 3. Prejudice to Movants If Motion is Denied

■ In determining the timeliness of this motion, the Court should consider any prejudice to the movants should the Court deny their motion to intervene. In a sense, this question is related to whether the United States can represent the movants' interests adequately. Of course, the movants may disagree with the United States about the reorganization plan. Assuming that their view of the plan is different from the United States' view, they would suffer prejudice in this sense. While the movants could file amicus briefs if their motion is denied, to challenge the plan effectively, they presumably will want to conduct extensive discovery to expose what the school board has done behind the scenes. They may resort to filing a separate action in this Court seeking injunctive relief. *See Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (allowing a separate suit to challenge a consent decree even though the plaintiffs could have intervened in the original suit). Resorting to a separate suit will prejudice the movants, however, because it will delay any relief this Court might grant, and in the meantime the board will take further steps to implement the new plan.[6] Thus, denying

---

4. The parties argue that the motion is untimely because intervenors should have complained about the plan's impact on desegregation in the public hearings and in the proceeding before the Department of Education. While their failure to do so certainly raises questions about what their real opposition to the plan might be, it does not render this motion untimely. The question is whether the motion was timely filed in this Court, not whether the issue was raised elsewhere in a timely fashion.

5. Prejudice to the parties from the *intervention* itself should not influence the determination of timeliness. Instead, only prejudice resulting from the *delay in filing the motion* is relevant. *Stallworth v. Monsanto Co.,* 558 F.2d 257, 265 (5th Cir.1977).

6. The Court may also consider the burden a separate suit would have on judicial economy in determining whether intervention is appropriate. *Howard v. McLucas,* 782 F.2d 956, 960 (11th Cir.1986).

the motion may prejudice the movants' interest in opposing the school reorganization plan.

### 4. Unusual Circumstances

Neither the parties nor the movants describe any unusual circumstances militating for or against a determination of timeliness. Thus, this fourth factor does not change the result.

Considering all four of the relevant factors, the Court finds that the motion is timely. The dormant nature of this case suggests that the movants had no reason to know of their interest in this case until August, and although the delay has not harmed the parties significantly, denying the motion may prejudice the movants. Moreover, no unusual circumstances suggest that the motion is untimely.

### B. Requirements for Intervention by Right

Because the Court deems the motion timely, the movants may intervene as a matter of right if they show that (1) they claim an interest relating to the subject of the action, (2) disposition of the action may impede or impair their ability to protect that interest, *and* (3) existing parties do not adequately represent their interest. Fed.R.Civ.P. 24(a)(2).

■ The movants clearly claim an interest in this case. As the Former Fifth Circuit noted, "[t]his court has long recognized the intense interest of parents in the education of their children, and it has been solicitous of their opportunity to be heard. Intervention in suits concerning public schools has been freely allowed...." *Graves v. Walton County Bd. of Educ.,* 686 F.2d 1135, 1142 n. 5 (Former 5th Cir. 1982).[7] Courts have limited intervention in school desegregation cases, however, by defining the term "interest" narrowly. *See United States v. Perry County Bd. of Educ.,* 567 F.2d 277, 279–80 (5th Cir.1978). For example, the Former Fifth Circuit held in *Perry* that parents who opposed a deseg-

regation plan did not have an interest in the desegregation case. *Id.* Nevertheless, the movants in this case have an interest that falls squarely within even the narrowest definition of "interest." They seek to block actions that allegedly would thwart the goal of a unitary system.

Furthermore, approval of the consent decree would impair the movants' ability to vindicate their interests. While they could institute a separate suit, they would have to request relief that would conflict with the consent order. This requirement impedes their ability to protect their interests. *See Stallworth v. Monsanto Co.,* 558 F.2d 257, 268 (5th Cir.1977).

■ Although the movants meet the other requirements for intervention by right, they have not shown that the United States cannot adequately represent their interests. A court may find that a proposed movant is adequately represented by an original party if the party is aware of the issues that the new party wants to present and is competent to represent his interests. *Hines v. Rapides Parish School Bd.,* 479 F.2d 762, 765 (5th Cir.1973). This requirement is met here. The movants have informed the Department of Justice of their criticisms of the new plan and provided it, and this Court, with documents supporting these claims. Although the movants understandably may want to present their own case, they have not proven that the Department of Justice is not competent to represent their interests. Thus, the Court finds that the government adequately represents the movants' interests.

Two other factors support the conclusion that the government adequately represents the movants' interests. First, if one of the original parties has the same ultimate objective as the movant, "a presumption arises that his interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *International*

---

**7.** Decisions of non-unit panels of the Former Fifth Circuit are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Sec., Inc.,* 667

F.2d 33, 34 (11th Cir.1982). Hence, these decisions also bind this Court.

*Tank Terminals, Inc. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978). Second, when the government is a party, the moving party must make a very compelling showing of inadequacy of representation. *Jones v. Caddo Parish School Bd.,* 704 F.2d 206, 221 n. 25 (5th Cir.1983). The rationale for this heavier burden is that the government is "charged by law with representing the interests of the absentee." *United States v. South Bend Comm. School Corp.,* 692 F.2d 623, 628 (7th Cir. 1982).

The Seventh Circuit, in *South Bend,* explained these principles. In that case, the local school board developed a school desegregation plan and submitted it to the district court a consent order incorporating the plan. Shortly after it was submitted, the NAACP sought to intervene as a plaintiff. The Seventh Circuit affirmed the district court's denial of the motion to intervene. The Seventh Circuit presumed that the government adequately represented the NAACP because the NAACP and the government had the same ultimate objective, "the system-wide desegregation of students and staff as called for in the consent decree." *Id.* at 628. The NAACP failed to show any gross negligence, bad faith, collusion, or ineffective counsel; therefore, it had failed to overcome the presumption. *Id.*

In this case, the United States and the movants have the same ultimate objective, a unitary school system. The movants claim nonfeasance by the Department of Justice, noting that the government did not monitor the development of the new plan but quickly agreed to the high school consolidation soon after learning of the plan. At the evidentiary hearing, the movants placed great emphasis on the fact that the government had not conducted personal interviews of the moving parties. Of course, the government is not required to do so. This fact, therefore, does not show nonfeasance. The Department of Justice is continuing to review the comprehensive reorganization plan; it may have other objections to it. Because the movants presented no real evidence of governmental negligence, nonfeasance or collusion, the Court finds that the government can represent the movants' interests adequately.

Although the movants have an interest in this case that could be prejudiced by the outcome, and although the court finds that the motion is timely, the United States can adequately represent the movants' interest. Consequently, the movants may not intervene as a matter of right.

**C. Considerations of Permissive Intervention**

■ When proposed intervenors may not intervene as a matter of right, courts may nevertheless permit intervention under Federal Rule of Civil Procedure 24(b). Under Rule 24(b), courts may allow intervention on a timely motion if (1) there is a common question of law and fact between the movant's claim and the main action, *and* (2) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. The Court has discretion whether to allow intervention under Rule 24(b). *See Kneeland v. NCAA,* 806 F.2d 1285, 1289 (5th Cir.) (a court's refusal of intervention is within its discretion), *cert. denied,* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987).

■ In this case the movants' claim clearly has questions of law and fact in common with the main action: as noted above, the movants' interest appears to be virtually identical to that of the United States. Nevertheless, the parties insist that intervention would cause undue prejudice in that the movants will hamper their ongoing negotiations. They cite an unpublished opinion of the Fifth Circuit for this proposition. *Jones v. Caddo Parish School Board,* 915 F.2d 1568 (5th Cir.1990). In *Jones,* individuals opposed a 1981 consent order and later attempted to intervene prior to a 1987 hearing to determine whether a school system had attained unitary status. *Id.* Negotiations between the United States and the school system were active and ongoing.

In this case, the Court has not entered consent order dealing with this proposed plan. Nevertheless, the parties have

reached an agreement regarding the consolidation of the high schools. They continue to negotiate over the other aspects of the new plan, and to allow intervention would prejudice these ongoing negotiations. The defendants have submitted evidence that suggests that if approval of the plan is delayed beyond the middle of January 1991, the school system could lose over nine million dollars in state funding. Accordingly, the Court will not permit intervention under Rule 24(b).

## CONCLUSION

The Court DENIES the motion to intervene. The movants filed this motion in a timely fashion, and they do have an interest in the outcome of the case that could be prejudiced if they cannot intervene. Nevertheless, the Court is convinced that the United States Department of Justice can and will represent those interests adequately. For this reason the movants may not intervene as a matter of right.

Furthermore, although the movants' claims contain questions of fact and law in common with the issues of this case, the Court will not grant the movants' permission to intervene. This decision reflects the Court's determination that intervention will prejudice the parties' ongoing negotiations. The Court is confident that the movants' interests will be considered by the parties during these negotiations.

SO ORDERED.