James REEVES, et al.,
Plaintiffs-Appellants,

v.

James B. HARRELL, et al.,
Intervenors-Appellees,

v.

Ray WILKES, et al.,
Defendants-Appellees.

No. 85–8717.

United States Court of Appeals,
Eleventh Circuit.

June 23, 1986.

Rehearing and Rehearing En Banc
Denied Aug. 7, 1986.

Robert E. Steele, Jr., Linda Mabry, Macon, Ga., for Reeves, et al.

Charles R. Adams III, Cynthia T. Adams, Ft. Valley, Ga., for Harrell.

O. Hale Almand, Jr., Susan S. Cole, Macon, Ga., for Wilkes.

Before HILL and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

This appeal raises novel issues growing out of the efforts of a group of civil rights plaintiffs to secure an award of attorney's fees after their successful defense of a consent decree. After a careful review of the briefs, the record and the relevant case law, we conclude that the district court erred in denying the plaintiffs attorney's fees against the intervenors and therefore we affirm the judgment in part and reverse and remand in part.

### Factual Background

On March 24, 1978, black deputy sheriffs in the Bibb County Sheriff's Office filed a lawsuit in the United States District Court for the Middle District of Georgia alleging that they had been denied job assignments and promotions because of their race. The complaint, brought pursuant to 42 U.S.C. §§ 1981 and 1983, named the Bibb County Board of Commissioners and the Sheriff of Bibb County as defendants. On June 18, 1979, the parties entered into a consent decree which was incorporated into an order of the district court. The consent decree provided, among other things,[1] for the promotion of blacks within the Bibb County Sheriff's Office on a fifty percent (50%) basis with whites.

On February 17, 1982, two years and eight months after the consent decree was entered, two white deputy sheriffs filed a motion to intervene as plaintiffs in the action. They alleged that, pursuant to the consent decree, the defendants adopted policies and practices which discriminated against the intervenors on the basis of race with respect to promotions. The original plaintiffs vigorously opposed the motion to intervene claiming that the motion was untimely and that the intervenors' substantive claims lacked merit. The Sheriff and the Board of Commissioners took no posi-

---

1. The other provisions of the consent decree are not relevant here.

tion as to the propriety of the intervention. They responded to the motion by stating that they had continuously complied with the consent decree and would continue to do so until ordered otherwise by the district court.

On April 28, 1982, the district court granted the motion to intervene. Subsequently, the intervenors filed a motion to dissolve or modify the consent decree. On December 9, 1983, the district court granted the intervenors' motion and dissolved the 50% quota requirement relating to promotions within the Sheriff's department. The plaintiffs appealed that decision to this court which reversed the district court for the sole reason that the motion to intervene was not timely filed. *Reeves v. Wilkes*, 754 F.2d 965 (11th Cir.1985).

■ The plaintiffs then filed an application for attorney's fees in the district court against both the intervenors and the defendants pursuant to the provisions of 42 U.S.C. § 1988, which provides the following in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

On August 13, 1985, the district court entered an order denying the plaintiffs' motion for attorney's fees as to both the defendants and the intervenors. The court found that the defendants were not liable for attorneys' fees because they "played at most a neutral role in the intervention proceedings" and thus were not in an adversarial relationship with the plaintiffs. Record on Appeal, Vol. II, tab 216 at 7–8. The court further held that the intervenors were not responsible for attorneys' fees because the plaintiffs prevailed on a procedural point only and thus were not "prevailing parties" under 42 U.S.C. § 1988 and because the intervenors were "legitimate claimants" whose attempt to vindicate their rights was not frivolous or groundless. *Id.*, at 5. The plaintiffs filed a timely ap-

peal from the district court's judgment which can be overturned only upon a showing of an abuse of discretion. *Fields v. City of Tarpon Springs, Fla.*, 721 F.2d 318, 321 (11th Cir.1983).

*Discussion*

### 1. *The Defendants*

■ In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court repeated the well established rule that "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express, statutory authorization to the contrary." *Id.* at 429, 103 S.Ct. at 1937. 42 U.S.C. § 1988, the statute relied on by the plaintiffs, requires that a litigant must be a "prevailing party" before he is entitled to attorney's fees. In the present case, however, the plaintiffs did not "prevail" vis-a-vis the defendants because the defendants did not join in the motion to intervene nor did they express any position on the termination of the consent decree. The defendants simply remained neutral on all of the issues raised by the intervenor's complaint and notified the district court that they would continue to comply with the consent decree until otherwise instructed by the court.

The plaintiffs urge that the defendants were not neutral but instead "encouraged the white deputies to file a reverse discrimination complaint" thereby contributing "to the time and expense of plaintiff [sic] in protecting and vindicating the Consent Decree." Plaintiffs' brief at 13, 28. The evidence in the record relied on by the plaintiffs to support this proposition consists entirely of two statements made to the media by representatives of the Sheriff's department. On October 23, 1981, before the filing of the intervenors' motion, Sheriff Wilkes stated in a Macon newspaper that "[w]e're hurting some men who have excellent records because of the consent decree." And, the same article quoted the Bibb County Personnel Director as saying that "[t]he one-on-one requirement has slowed the promotion process." These two out-of-court statements do not in any way

establish that the defendants sided with the intervenors against the plaintiffs in light of the specific on-the-record statements made by the defendants that they took no position on any of the issues raised by the intervenors' complaint.

█ The plaintiffs also claim that they are entitled to attorney's fees against the defendants because the defendants did not join the plaintiffs in their efforts to dismiss the intervenors' complaint. This argument, however, presupposes an obligation on the part of the defendants to defend the consent decree against third parties. The plaintiffs have failed to cite to any case law, statute, or policy reasons to support that proposition in a situation where third parties act independently of the original defendants. In view of the general rule which does not permit the grant of attorney's fees unless expressly provided otherwise by statute, see *Hensley, supra* 461 U.S. at 429, 103 S.Ct. at 1937, we hold that there is no basis in the present record upon which to award the plaintiffs attorney's fees against the defendants.

### 2. *The Intervenors*

█ The district court did not assess attorney's fees against the intervenors for two reasons. First, the court found that the intervenors should be characterized as plaintiffs and therefore could not be liable for attorney's fees because their claims were not frivolous or unreasonable. Second, the court found that the plaintiffs were not "prevailing parties" because they succeeded on only a procedural matter. We conclude that the district court abused its discretion on both points and should have awarded reasonable attorney's fees to the plaintiffs.

Under 42 U.S.C. § 1988, a prevailing plaintiff in a civil rights action is generally entitled to attorney's fees unless special circumstances would render such an award unjust. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488

(1980). A prevailing defendant, however, is ordinarily not entitled to attorney's fees unless the plaintiff's claims were frivolous or unreasonable so as to insure that plaintiffs will not be deterred from litigating good faith constitutional claims. *Hughes v. Rowe*, 449 U.S. 5, 11, 101 S.Ct. 173, 177, 66 L.Ed.2d 163 (1980). In the present case, the intervenors claimed that the consent decree's quota provision violated their constitutional rights. Furthermore, it is undisputed that the intervenors were not responsible for any of the alleged violations that led to the consent decree or that they had ever violated the constitutional rights of any of the members of the plaintiff class. Therefore, we agree with the district court that the intervenors should be characterized as plaintiffs and are liable for attorney's fees only if their claims were frivolous.

█ The motion to intervene was filed over two and a half years after the entry of the consent decree. Although the district court did not discuss timeliness in its order granting the motion to intervene, a panel of this court found that the district court abused its discretion by allowing the intervention after so long a delay. *Reeves v. Wilkes*, 754 F.2d 965 (11th Cir.1985). In fact, the *Reeves* panel found that the intervenors failed to meet any part of the four-prong test for timely intervention laid out in *Stallworth v. Monsanto*, 558 F.2d 257 (5th Cir.1977).[2] The *Reeves* opinion adequately articulates the reasons for the untimeliness of the intervenors' motion and there is no need to repeat that discussion here.

The intervenors maintain that their claims were not frivolous because the district court ruled in their favor on the merits and because the *Reeves* panel did not overturn that decision but simply found the intervention untimely. This argument, however, misses the point. The intervenors chose to use intervention as the

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Cir-

cuit Court of Appeals decided prior to October 1, 1981.

procedural mechanism to pursue their claims. This means, however, was clearly unavailable to them under existing case law. Therefore, the issue is not whether the intervenors' claims have merit, but whether their decision to pursue those claims by filing a motion to intervene was frivolous or unreasonable. Considering the long delay between the entry of the consent decree and the motion to intervene and the decision by a panel of this court that the intervenors failed to satisfy even one prong of the four prong *Monsanto* test, we agree with the plaintiffs that the intervenors' attempts to inject their claims into this litigation was frivolous and makes them liable to the plaintiffs for reasonable attorney's fees.

■ The district court also held that the intervenors were not liable for attorney's fees because the plaintiffs prevailed solely on a procedural point. The court cited *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) to support its decision. The court's reliance on *Hanrahan* is misplaced. In *Hanrahan*, the plaintiffs were awarded attorney's fees after they secured a ruling from the Seventh Circuit Court of Appeals overturning a directed verdict and remanding the case for a new trial. The Supreme Court reversed the award of fees holding that Congress intended that such fees were available only after a party had prevailed "on the merits of at least some of his claims." *Id.* at 758, 100 S.Ct. at 1990. Because the relief obtained in *Hanrahan* was interlocutory in nature, the Supreme Court held that the plaintiffs were not prevailing parties for purposes of 42 U.S.C. § 1988.

In the present case, the intervenors contend and the district court found, that the plaintiffs are not prevailing parties because the *Reeves* panel did not reach the merits of the intervenors' complaint but rather found for the plaintiffs for procedural reasons. This argument ignores the fact that the plaintiffs prevailed completely in this lawsuit. They successfully defended the consent decree and its quota provision. Unlike the situation in *Hanrahan*, where

the plaintiffs still had to litigate the merits of their action before a jury, no further action is required by the plaintiffs to prevail here. Consequently, the plaintiffs completely prevailed in this litigation and are entitled to attorneys fees from the intervenors.

In summary, we find that the district court correctly determined the plaintiffs were not entitled to attorney's fees from the defendants. We conclude, however, that the court abused its discretion by disallowing fees from the intervenors. Accordingly, the case is remanded to the district court for a determination of a reasonable fee award.

AFFIRMED in part and REVERSED and REMANDED in part.

HILL, Circuit Judge, dissenting:

I agree with the majority's conclusion that the intervenors in this action should be considered "plaintiffs" for the purposes of determining whether they should be held liable for attorney's fees. I must respectfully dissent, however, from the majority's judgment that the intervenors' claim to intervention in this case was frivolous. The majority frames the issue as I do, by asking "whether [the intervenors'] decision to pursue [their] claims by filing a motion to intervene was frivolous or unreasonable." *Ante*, at 1485. I cannot agree with the majority's conclusion, however, that the intervention they sought "was clearly unavailable to them under existing case law" because it was untimely. *Id.* In my view, intervenors could reasonably have concluded, on the basis of the case law available to them at the time, that their claim to intervention enjoyed a sufficient probability of success before the district court and this court when it was filed to have elevated it above frivolousness.

The consent decree that is the subject of this litigation established, *inter alia,* mandatory racial quotas for hiring and promotion within the Bibb County Sheriff's Department, of which intervenors are white employees. *See Reeves v. Wilkes,* 754 F.2d 965, 967 (11th Cir.1985). The hir-

ing provisions of the decree stipulated that 50 percent of all entry level vacancies for deputy sheriff positions would be filled by black applicants until such time as 40 black deputies were employed. The promotion provisions similarly required that at least 50 percent of promotions made be given to blacks, but those provisions did not include a time limit on their operation or any numerical goal that would have to be achieved before they would no longer be effective. Instead, the decree simply provided that the promotions system it mandated would be followed "until the court shall determine that the defendants have complied in good faith with this order and the requirements of federal laws relating to employment practices." *Id.* (quoting from the decree). The decree was approved by the district court on June 18, 1979.

In February of 1982, two years and eight months later, intervenors sought to intervene in the implementation of the decree for the very limited purpose of triggering the closure provision of that portion of the decree which governs promotions. As this court noted in reversing the district court's decision to allow the officers to intervene, "they did not make a collateral attack upon the legality of the decree, nor seek to review prior promotion decisions made under the decree." *Id.* at 968. Instead they simply contended "that 'good faith' had been established and that the remedial purpose sought to be accomplished by the provision had been served." *Id.*

The majority considers it significant that this court, closely following *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir.1983), found the intervenors to have failed to establish that their claim was timely filed. Those decisions, of course, were not available to intervenors when they decided to seek to intervene and, for that reason, are of limited usefulness in determining whether that decision was frivolous or unreasonable in light of the case law available at the time. Moreover, to the extent that such decisions are relevant to our assessment of the reasonableness of intervenors' attempt to intervene, I would

include among them our recent decision in *Howard v. McLucas,* 782 F.2d 956 (11th Cir.1986), wherein we recognized the difficulties inherent in applying the standard test for determining timeliness of intervention to cases like this one and allowed a group of affected white and non-black employees to intervene to challenge the promotional provisions of a consent decree nearly ten years after suit had been filed. *See id.* at 959–61.

The principal case on timeliness of intervention in similar suits that was available to intervenors when they decided to attempt to intervene was *Stallworth v. Monsanto Co.,* 558 F.2d 257 (5th Cir.1977). In that case, the former Fifth Circuit set forth the four factor test for determining timeliness of intervention that was later applied in *Jefferson County, Reeves* and *Howard v. McLucas.* Although *Stallworth,* in allowing intervention, informed potential intervenors who would seek to upset consent decrees of the factors that would be considered significant in determining whether such intervention was timely, it hardly foreclosed as untimely the claim made by intervenors in this case.

In particular, nothing in *Stallworth* required the court in *Reeves* to apply the four factor timeliness test without regard to the limited nature of the intervention that was sought. The *Reeves* court applied the four factor test to require intervention even by persons who are satisfied with a consent decree as drafted and approved as soon as practicable after it appears that they might someday perceive their interests to be adversely affected by the parties' failure to act in accordance with the terms of the decree. Where potential intervenors are satisfied with a decree, however, I would not require them to intervene immediately upon learning of the terms of the decree simply because they might someday be dissatisfied if the parties fail to enforce and abide by the terms of the decree. If potential intervenors are willing to confine their later intervention to a claim that is, in essence, a claim that their rights are being violated because the decree is not being

implemented in accordance with its terms, requiring them to intervene as soon as they learn of the terms of the decree seems to suffer vices closely analogous to those the *Stallworth* court recognized when considering whether the institution of suit should be the critical event in determining timeliness of intervention:

> [A] rule making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention. It would encourage individuals to seek intervention at a time when they ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high. Often the protective step of seeking intervention will later prove to have been unnecessary, and the result will be needless prejudice to the existing parties and the would-be intervenor if his motion is granted, and purposeless appeals if the motion is denied. In either event, scarce judicial resources would be squandered, and the litigation costs of the parties would be increased. Such a rule would also mean that many individuals who excusably failed to appreciate the significance of a suit at the time it was filed would be barred from intervening to protect their interests when its importance became apparent to them later on. These effects would be inconsistent with the important purposes of Rule 24: to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation.

*Stallworth,* 558 F.2d at 264–65.

These are not frivolous concerns, nor was it unreasonable of the intervenors in this case to consider it quite possible that this court would be motivated by such concerns to decide that the *Stallworth* test should not be applied as it was in *Reeves,* but instead should be applied with some sensitivity to the nature of the intervention sought. The resulting analysis still might have resulted in a denial of intervention as untimely, but the intervenors' claim surely would not look as "frivolous," in hindsight, as it perhaps does now when the opinion in *Reeves* is read without considering the possible significance of this difference between the facts of *Reeves* and the cases on which it relied. Although it is the law of this case that intervention should not have been allowed, I find the conclusion inescapable that intervenors' claim to intervention in this novel case was not frivolous because untimely, and that attorney's fees should not be assessed against them on that ground.