843 F.2d 1391
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William C. MILES Jr., III, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
 No. 85-3856.
 United States Court of Appeals, Sixth Circuit.
 March 31, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and JAMES HARVEY*, Senior District Judge.
 PER CURIAM.
 
 
 1
 William C. Miles, Jr., III, is a black man who was employed by the General Motors Corporation (GM) at its Defiance, Ohio, foundry beginning in March 1973. For much of his employment there he worked as a foreman, although he also worked as a production worker, or was laid off entirely. In June 1977, after serving as a foreman for the preceding twenty-one months, Miles was demoted to hourly production worker. Miles sued GM under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., contending that this demotion was based on his race. GM contends that the demotion was entirely proper, based on his working record, and that Miles was in no way treated differently because of his race.
 
 
 2
 After a one-day bench trial in September 1980, the case was taken under advisement. In January 1985, the district court found in favor of Miles, resting its opinion on a number of specific factual findings as to practices at the Defiance foundry and events involving Miles. In the district court's view, these findings discounted GM's stated reasons for demoting Miles.
 
 
 3
 Upon careful consideration of the record, we find a number of important instances where the district court's findings are directly contradicted by the record, unsupported by the record, or otherwise clearly erroneous. In the absence of these erroneous findings, plaintiff has not sustained his burden of showing that the defendant's reasons for the demotion are pretextual and that he suffered from disparate treatment on account of his race, in violation of Title VII. We therefore reverse the judgment of the district court.
 
 
 4
 * Miles was first hired at the Defiance foundry in March 1973. After four months of training in a pre-management program, he served as foreman from December 1973 until February 1974, when he was laid off for five months because of business conditions. In July 1974, he was recalled as a foreman and worked in that position for six months. From January to September 1975, he worked as an hourly production worker because of a reduction in work force. In September 1975, Miles was again made a foreman and worked in that position until his demotion in June 1977.
 
 
 5
 During that time Miles's work performance, as reflected by contemporaneous job evaluations from two supervisors, was consistently marginal. On three performance evaluations from 1975 to 1977, out of forty-nine rating areas, forty-one were below average. Direct testimony from supervisors and from company records indicated: (1) that the shift which Miles supervised had twice as much "down time" as a comparable shift which he did not supervise; (2) that he received twenty-six grievances from employees during a period when a comparable supervisor received three grievances; and (3) that during his period of employment as supervisor from 1975 to 1977 his shift had sixty-two injuries compared to twenty injuries on the comparable shift. Further, supervisors repeatedly observed substantial violations of safety and work practices on Miles's shift beyond those which occurred on other shifts.
 
 
 6
 The record shows, and the judge made no finding or indication to the contrary, that Miles was replaced by a Mr. Jordan, a black man.
 
 
 7
 None of the above matters was contradicted, or found not credible by any of the district court's findings.
 
 
 8
 Rather, the district court discounted this evidence based on a series of findings disparaging the general management and atmosphere of the plant, and the specific actions of Miles's final supervisor, Thomas McClennan. This included such determinations as:
 
 
 9
 1. That the Defiance plant was a "lily-white environment";
 
 
 10
 2. That plaintiff "drove sporty cars" and "played hard," which was "not viewed with pleasure by those in positions of authority;"
 
 
 11
 3. That defendant's arguments based on Miles's work performance were unsupportable because "such things should be shown by [work] records, and no such records were provided," so that it must be taken that "the records would ... refute the claims of the defendant;"
 
 
 12
 4. That the shift preceding Miles's "usually did not clean up the pouring line and the ladles before they left," adding to the difficulties of Miles's shift;
 
 
 13
 5. That a fellow foreman, Mr. Files, the "only ... witness who can be considered as being disinterested," had been treated differently than Miles and that Files thought Miles "did exceptionally well at [his work]";
 
 
 14
 6. That McClennan, plaintiff's last supervisor, had made derogatory remarks after the resignation of another black foreman, "who was subjected to the same treatment as plaintiff."
 
 
 15
 However, upon our consideration of the record, each of these items is not supported by the record and is clearly erroneous.
 
 II
 
 16
 There was no evidence that the Defiance foundry was a "lily-white environment." The evidence instead supports GM's contention that there not only were there many black employees, but a significant number of black foremen were employed. McClennan testified, without contradiction, that three of six foremen under his supervision were black. The judge made no specific findings to support his general assertion. Plaintiff contends on appeal that his finding could have been supported based on judicial notice. However, judicial notice only applies to facts "not subject to reasonable dispute," Fed.R.Evid. 201(b), and only applies where the opposing party has notice that judicial notice is being taken. Fed.R.Evid. 201(e).
 
 
 17
 There was absolutely no evidence indicating displeasure by the company at the fact that Miles drove a Cadillac, a GM product.
 
 
 18
 Further, the uncontradicted testimony in the record was that detailed production records are routinely destroyed after one year. No request was made by the plaintiff for the preservation or production of the records. Heretofore, the so-called "missing documents rule" cannot be applied against GM in this situation. Before the missing document rule will be applied the missing document must be within the power of the party to produce, and a demand for the document must have been made. 2 J. Wigmore, Evidence, Sec. 291, at 226 (1979). See also Layne v. Vinzant, 657 F.2d 468 (1st Cir.1981). Therefore the district court erroneously used this rule to determine conclusively the issue of Miles's work performance.
 
 
 19
 A thorough search of the record has revealed only one piece of evidence in the entire record regarding any exacerbation of Miles's difficulties by sloppiness of the first shift. In response to a different question, Miles added that there was a time when "my equipment was in a big mess and it had to be cleaned up in order to pour good iron and there was down time, which should have been charged to the first shift." There was no elaboration, or any intimation that it ever happened again. There is simply no support in the record for the district court's finding that the first shift "usually did not clean up."
 
 
 20
 It is particularly strange that the district court makes no reference to the fact that Mr. Files, its exemplar of a disinterested witness and of a foreman who was treated properly and in a fashion disparate from that of Miles, is black. Thus, the distinction between Miles and Files was not that one was black and one was white, but that one was doing an acceptable job and the other was not.
 
 III
 
 21
 The district court correctly set out the analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in which a plaintiff must first produce a prima facie case of discrimination, after which the employer bears the burden of producing a legitimate non-discriminatory reason for its action, after which defendant must establish that defendant's articulated reason is pretextual. Id. at 802-805. Accord, Williams v. Hevi-Duty Electric Co., 819 F.2d 620, 629 (6th Cir.1987); Grubb v. W.A. Foote Memorial Hospital Inc., 791 F.2d 1486, 1492-93 (6th Cir.1984). However, rather than conducting this analysis, the court noted that since it had "heard all the evidence, it would address the ultimate factual issue, rather than engaging in the foregoing three-tiered evidentiary analysis." The court thus did not directly examine the question of whether management's reasons were in fact pretext. The court appeared to rest on a general feeling that Miles had been treated shabbily, rather than on any evidence that would justify the conclusion that management's stated reasons were non-existent or pretextual. As set forth above, the court's specific statements on most of the important issues go well beyond the record.
 
 
 22
 The district court did not distinguish its findings of facts from conclusions of law. It specifically noted that it would "not make any minute analysis of the evidence offered, but will resolve the dispute of fact by stating its ultimate factual conclusion." However, we have set out above the major factual statements the judge made in support of his conclusion that Miles's demotion had been based on racial discrimination. After our careful consideration of the record supporting the above findings, this court is confident that those findings do not meet the standard of United States v. United States Gypsum Co., 333 U.S. 364 (1948). The Supreme Court there stated that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. at 395.
 
 
 23
 Nor are the district court's findings insulated from review by its statement that its findings rested on "those little subtleties and variations in the manner and appearance of the witnesses on the stand, and the way in which they spoke and responded to questions...." As the Supreme Court recently emphasized in Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985),
 
 
 24
 "[t]his is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors others than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. Where such factors are present, the court of appeals may find clear error even in a finding purportedly based on a credibility determination."
 
 
 25
 In this case the district court did not rely on believing Miles as opposed to other witnesses in direct contradictions, as, for example, whether a particular remark was made to Miles. Miles's testimony conceded that he had made no specific complaints of discrimination, and he was unable to relate any specific incidents purporting to display racial animus, with the exception of one incident.
 
 
 26
 That incident related to Miles's hearsay narrative of a black foreman who apparently left because of mental difficulties ("there was one guy who was talking to an apple"). Miles stated that McClennan had said "there is one more to go," which Miles apparently understood to mean one more black foreman who should be disposed of. However, Miles did not hear the remark himself, gave no indication that anyone else had made the same interpretation of the remark, and gave no indication that he had conveyed his interpretation to anyone else. We note that it is uncontradicted that there were three black foremen who worked for McClennan at this time. There was no evidence whatsoever concerning the relations between the unnamed foreman and McClennan, so the court is clearly erroneous in finding that the foreman was treated the same as Miles, or, indeed, in any particular manner.
 
 
 27
 There is no credibility determination involved in the consideration of Miles's performance appraisals, which were uniformly below standards, or the grievance or injury reports. In particular, despite Miles's repeated assertions that he had a "perfect safety record," management could legitimately be concerned about a significantly higher injury rate as an indication of poor supervision. Management particularly testified to his failure to ensure that his workers wore their goggles as an example of failure to supervise those items that were most easily supervised. The court also misstates the record in finding that Mr. Files had testified that Miles ran his unit "exceptionally well." The actual statement in the record is that Miles ran it "as well as could be expected," hardly a ringing endorsement.
 
 
 28
 In short, the district court's findings display a consistent overstating of the record to present items favorable to Miles, with no clear consideration of the key issue of whether the management concerns were in fact pretextual. Although GM's relation to Miles may not stand as a monument of enlightened employee relations, the record as a whole simply will not bear the interpretation that the district court placed on it.
 
 
 29
 It is possible for there to be racial animus against one worker even though none is displayed against other comparably situated workers of that worker's group. However, the claim that its actions were based on a competency determination, and were not a pretext for discrimination, is certainly buttressed by the fact that Mr. Files, the court's star witness, and Mr. Jordan, who at the time of trial had held Mr. Miles's job for several years, are both black.
 
 
 30
 In this case there is some evidence, which the court could have credited, that McClennan did not particularly like Miles and that management was not always responsive to Miles's concerns. The court found it significant that Miles's name had been left off a recognition list when the plant had good production. Despite a protest, no correction was published. However, after examining all of the evidence, including Miles's ratings over a period of time including ratings not by McClennan, the consistent pattern of the problems with his performance, the documentation of greater injuries and grievances on his shift, and the clear evidence of appropriate recognition of other black foremen such as Files and Jordan, we are left with the definite and firm conviction that the court erred in finding that racial discrimination was responsible for Miles's demotion.
 
 
 31
 In the absence of the factual findings which have been found above to be clearly erroneous, there is insufficient evidence to sustain plaintiff's burden of showing that his demotion was not based on performance but rather was a pretext for racial discrimination. Therefore, judgment of the district court is REVERSED and REMANDED with instructions to dismiss the complaint.
 
 
 
 *
 The Honorable James Harvey, United States District Senior Judge for the Eastern District of Michigan, sitting by designation