Philip PARADISE, Jr., etc.,
et al., Plaintiffs,

United States of America, Plaintiff
and Amicus Curiae,

v.

Ned McHENRY, as Director of the
Alabama Department of Public
Safety, et al., Defendants,

V.E. McClellan, et al., Defendant–
Intervenors.

Civ. A. No. 3561–N.

United States District Court,
M.D. Alabama, N.D.

July 29, 1992.

See also 686 F.Supp. 1442. .

J. Richard Cohen, Montgomery, AL, for plaintiff.

James Wilson, U.S. Atty., Montgomery, AL, Steven B. Royster, Employment Litigation Section, Civil Rights Div., Washington, DC, for U.S.

R. Frank Ussery, Asst. Atty. Gen., Montgomery, AL, for Director of the Department of Personnel.

Wm. Gardner, Wm. Thomas, Birmingham, AL, David Christy, Office of the Atty. Gen., Montgomery, AL, for Personnel Director.

Jack Curtis, Chief Counsel, Department of Public Safety, Montgomery, AL, for defendants.

Edward L. Hardin, Jr., Birmingham, AL, for Alabama Dept. of Public Safety.

## ORDER

MYRON H. THOMPSON, District Judge.

On February 25, 1987, the United States Supreme Court affirmed the 1983 order of this court temporarily requiring, with regard to each rank within the Alabama state trooper force, that the Alabama Department of Public Safety promote black officers on a one-to-one basis with white officers until such time as either approximately 25% of the rank is composed of black officers or the Department has implemented a promotion plan for the rank consistent with prior court orders. *United States v. Paradise,* 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987), *affirming Paradise v. Prescott,* 767 F.2d 1514 (11th Cir.1985) (per curiam), *affirming Paradise v. Prescott,*

585 F.Supp. 72 (M.D.Ala.1983). The Supreme Court reasoned that, "in light of the Department's long and shameful record of delay and resistance," 480 U.S. at 185, 107 S.Ct. at 1074, the trial court had " 'the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.' " *Id.* at 183, 107 S.Ct. at 1073, quoting *Louisiana v. United States,* 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965).

Having succeeded in defending the 1983 order on appeal, the plaintiffs, who represent all black troopers and cadets within the Public Safety Department and all black applicants for those positions, now seek remuneration for the attorneys' fees they incurred during the Supreme Court proceedings. The plaintiffs seek fees from co-plaintiff United States of America and from the defendants, the Alabama Department of Public Safety and the Alabama State Personnel Department. The plaintiffs contend that the United States is liable because it was the party that petitioned the Supreme Court for review, that the Public Safety Department is liable because it actively supported the efforts of the United States before the Supreme Court, and that both the Public Safety Department and the Personnel Department are liable because their actions gave rise to the circumstances necessitating the 1983 order. The United States and the defendants each take the position that, although there may be some liability for attorneys' fees, it is not theirs. For the reasons that follow, the court concludes that the plaintiffs may recover attorneys' fees from the Public Safety Department only.

## I.

■ 28 U.S.C.A. § 2412(b) provides that the United States shall be liable for attorneys' fees "to the same extent that any other party would be liable."[1] The federal government's participation and potential liability in the lawsuit must, therefore, be

---

1. Section 2412(b) provides in relevant part that the "United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."

measured on the basis of how the court would treat another party if similarly situated in this litigation. *See Geier v. Richardson*, 871 F.2d 1310, 1312 (6th Cir.1989), *vacated on other grounds*, 881 F.2d 1075 (6th Cir.1989).[2] Here, the statutory provision governing a private litigant's liability for attorneys' fees is 42 U.S.C.A. § 1988, which provides in pertinent part that, in proceedings to enforce certain federal civil rights laws, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

■ In passing § 1988, Congress realized that, "In many cases arising under our civil rights laws, the citizen who must sue to the enforce the law has little or no money with which to hire a lawyer," *Hensley v. Eckerhart*, 461 U.S. 424, 445, 103 S.Ct. 1933, 1945, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring in part and dissenting in part) (quoting S.Rep. 94–1011, p. 2, U.S.Code Cong. & Admin.News 1977, p. 5908); that "Civil rights remedies often benefit a large number of persons, many of them not involved in the litigation, making it difficult both to evaluate what a particular lawsuit is really worth to those who stand to gain from it and to spread the costs of obtaining relief among them," *id.* at 445 n. 5, 103 S.Ct. at 1945 n. 5; and that the "problem is compounded by the fact[ ] that monetary damages are often not an important part of the recovery sought." *Id.* However, rather than provide additional funds for public enforcement of private civil rights claims, Congress chose instead to cloak civil rights plaintiffs "in a mantle of public interest," *id.* at 443 n. 2, 103 S.Ct. at 1944–45 n. 2, and let private citizens act as "private attorneys general" to enforce our nation's civil rights objectives, S.Rep. No. 94–1011, at 3, with the defendant, because it is its actions that would give rise to the need for litigation, bearing the full brunt of the enforcement action should the plaintiff succeed. *Hensley*, 461 U.S. at

444–46, 103 S.Ct. at 1945–46. Therefore, absent special circumstances, the successful civil rights plaintiff should recover attorneys' fees from the defendant. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam).

■ However, no similarly broad guarantee applies to successful defendants in civil rights cases. The above described public policy objectives and concerns do not apply to defendants—in particular, because a losing plaintiff is not "a violator of federal law." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978). Nevertheless, defendants must be protected from vexatious lawsuits. The Supreme Court, therefore, established the following standard: a prevailing defendant may recover attorneys' fees from a plaintiff only if the plaintiff's litigation was frivolous, unreasonable, or without foundation. *Id.* at 421, 98 S.Ct. at 700.

## II.

■ There is no question that the plaintiffs were successful before the Supreme Court and thus must be considered prevailing parties for § 1988 purposes. However, relying on the reasoning of this court in *Paradise v. Prescott*, 626 F.Supp. 117 (M.D.Ala.1985), the United States contends that its liability must be assessed pursuant to the frivolous-or-unreasonable standard. In this 1985 opinion, the court was confronted with the question of whether white officers, who had intervened as defendants to protect their interests in this litigation, should also be liable for the plaintiffs' attorneys' fees after the Eleventh Circuit had rejected the white officers' challenge to the 1983 order requiring temporary one-for-one promotions. The court reasoned that the *Christiansburg* standard applied because, although the white officers were nominally defendant-intervenors, they had served as

**2.** In *Geier,* the Sixth Circuit Court of Appeals, for reasons quite similar to those advanced by the plaintiffs in this litigation, found that the United States, as an intervenor, was responsible for the plaintiffs' fees and expenses as if it were

a defendant. The court, however, later vacated its opinion in the wake of *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989).

"functional plaintiffs." The court then concluded that the plaintiffs were not entitled to attorneys' fees because the white officers' claims were not frivolous, unreasonable, or without foundation. 626 F.Supp. at 118.

In *Reeves v. Harrell,* 791 F.2d 1481 (11th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987), the Eleventh Circuit Court of Appeals adopted this court's "functional plaintiff" approach. In *Reeves,* two black deputy sheriffs sued their employer alleging race discrimination. Their lawsuit ultimately resulted in a consent decree which provided that black officers would be promoted on a 50% basis with the white officers. More than two years after the consent decree was entered, two white deputy sheriffs moved to intervene as plaintiffs in the action. The black plaintiffs contested this proposed intervention and were ultimately successful in defeating this challenge. *See Reeves v. Wilkes,* 754 F.2d 965 (11th Cir.1985). The black plaintiffs then sought attorneys' fees from the white intervenors. Recognizing that "the intervenors claimed that the consent decree's quota provision violated their constitutional rights" and that "the intervenors were not responsible for any of the alleged violations that led to the consent decree or that they had ever violated the constitutional rights of any of the members of the plaintiff class," *Reeves v. Harrell,* 791 F.2d at 1484, the Eleventh Circuit held "that the intervenors should be characterized as plaintiffs" and could be held "liable for attorney's fees only if their claims were frivolous." *Id.*

More recently, in *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989), the United States Supreme Court confronted the issue of what standard should be applied when plaintiffs succeed in bringing claims that are opposed by "innocent intervenors"—that is, "intervenors who have not been found to have violated the Civil Rights Act or any other federal

law." *Id.* at 755, 109 S.Ct. at 2733. The Court held that "district courts should ... award ... attorney's fees against losing intervenors only where the intervenors' action was frivolous, unreasonable or without foundation." [3] *Id.* at 761, 109 S.Ct. at 2736. The Court offered a number of reasons for this conclusion. First, after noting "the crucial connection between liability for violation of federal law and liability for attorney's fees under fee-shifting statutes," *id.* at 762, 109 S.Ct. at 2737, the Court wrote that "foremost" among the considerations supporting its conclusion "is the fact that, in contrast to losing ... defendants who are held presumptively liable for attorney's fees, losing intervenors ... have not been found to have violated anyone's civil rights." *Id.* Second, the Court recognized that, like civil rights plaintiffs and unlike defendants, intervenors are often "welcome" litigants, *id.* at 764, 109 S.Ct. at 2738, pursuing "legitimate claims" on a par with those of plaintiffs. *Id.* at 765 n. 4, 109 S.Ct. at 2737–38 n. 4. Finally, the Court reasoned that the presence of intervenors whose contentions the plaintiffs must litigate without prospect of fee compensation will not undermine "the national policy against wrongful discrimination by encouraging victims to make wrongdoers pay at law." *Id.* at 761, 109 S.Ct. at 2736. In support of this point, the Court wrote that its opinion in *Martin v. Wilkes,* 490, U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), "establishes that a party affected by the decree in a ... case need not intervene but may attack the decree collaterally—in which suit the original ... plaintiff defending the decree would have no basis for claiming attorney's fees." *Zipes,* 491 U.S. at 762, 109 S.Ct. at 2736–37. Indeed, the Court emphasized, to hold that those who intervene "are presumptively liable for fees, while those who take the alternative course of becoming plaintiffs in independent lawsuits ... are presumptively shielded from liability, ... would encourage interested parties to await the entry of judg-

---

**3.** In *Zipes,* the Supreme Court was specifically addressing the award of fees under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C.A. §§ 2000e through 2000e–17. In the course of its decision, however, the Court noted that § 1988 should be interpreted in the same manner. 491 U.S. at 759 n. 2, 109 S.Ct. at 2735 n. 2.

ment and collaterally attack remedial schemes," *id.* at 764, 109 S.Ct. at 2738 (emphasis deleted), a result which "would serve the interests of no one: not plaintiffs, not defendants, not intervenors." *Id.* at 765, 109 S.Ct. at 2738.

The plaintiffs here argue that, although it would appear that their request for attorneys' fees from the United States falls within the coverage of *Zipes*—that is, the federal government was not the cause of the plaintiffs' injury—there is one significant distinguishing characteristic which requires that fee awards against the federal government should rest on a different standard: unlike private plaintiffs, the federal government has vast resources and thus needs no inducement to enforce civil rights laws. The court must reject this argument. First, in concluding in *Zipes* that intervening parties, who have not violated Civil Rights Acts, are like plaintiffs entitled to the benefit of the *Christiansburg* standard, the Supreme Court did not rest its reasoning on the ability or inability of intervenors to bear the plaintiffs' fees; it does not appear that the intervenor in *Zipes* lacked ample resources to pay the plaintiffs fees. Instead, as previously stated, crucial to the Court's holding was the fact that the intervenors had not violated the plaintiffs' civil rights. The Court rested its notion of fee liability on a concept of blame rather than economic worth. Second, in *Christiansburg*, the Supreme Court rejected a very similar argument. The Court emphasized that federal fee-shifting statutes "explicitly" require that the United States should be treated the same as other litigants. 434 U.S. at 422 n. 20, 98 S.Ct. at 701 n. 20. The Court then concluded that, "although a district court may consider distinctions between the [United States] and private plaintiffs in determining the reasonableness of the [United States'] litigation efforts, we find no grounds for applying a different standard whenever the [United States] is the losing plaintiff." *Id.*

The plaintiffs further argue that this court may nonetheless treat the federal government differently because § 1988 itself treats the federal government as being in a substantially different position from private parties. However, § 1988 is very explicit about the extent to which the federal government should be treated differently from private parties—it is precluded from *recovering* fees—while § 2412(b) is explicit about the extent to which the federal government shall be treated the same—"to the same extent that any other party would be *liable.*" (Emphasis added.) The issue before this court is not whether the federal government should recover fees but whether it should be liable for them. The guiding statutory principle here, therefore, is that the United States should be treated the *same* as private parties. This court therefore concludes that the *Christiansburg* standard applies to the plaintiffs' request for attorneys' fees from the United States.

Applying the *Christiansburg* standard, this court further concludes that the standard is not met here. The federal government's pursuit of review of this court's 1983 order before the United States Supreme Court was far from frivolous, unreasonable or without foundation. Although the plaintiffs prevailed, they did so by the vote of only one Justice. Four Justices agreed with the United States that this court had exceeded its equitable authority. *United States v. Paradise*, 480 U.S. at 196, 107 S.Ct. at 1079, (White, J., dissenting); *Id.* (O'Connor, J., with Rehnquist and Scalia, JJ., dissenting). *See also Paradise v. Prescott*, 626 F.Supp. 117 (M.D.Ala.1985) (finding that plaintiffs not entitled to fees from white intervening officers because said officers' challenge to the 1983 order was not frivolous, unreasonable, or without foundation).

III.

The Department of Public Safety argues that it too should not be liable for the plaintiffs' attorneys' fees. The Department contends that the conflict presented to the Supreme Court was solely an interstitial conflict between two sets of plaintiffs—the plaintiffs and the federal government—and that, as a result, it should not be held responsible for any attorneys' fees

incurred by the plaintiffs. The Department posits that it did not petition the Supreme Court for certiorari, that the federal government refused its assistance in preparing the case before the Supreme Court, and that its role before the Court, for practical purposes, amounted to little more than that of an *amicus curiae.* The Department further argues that its efforts to have the decisions of this court and the Eleventh Circuit reversed were merely duplicative of those of the federal government and that nothing it did caused the plaintiffs to undertake extra work. To support its argument, the Department relies on the Eleventh Circuit's opinion in *Reeves.*

The court is not persuaded by these arguments. As an initial matter, the Department can obtain no comfort from *Reeves.* In *Reeves,* the appellate court addressed not only the standard by which an intervenor may be held liable for a plaintiff's attorneys' fees, but also whether the defendant may be held liable to the plaintiff for fees incurred in responding to the intervenor's contentions—more specifically, whether the employer-defendants may be held liable for the fees incurred by the plaintiffs, two black deputy sheriffs, in opposing an unsuccessful effort by white deputies to intervene and attack an earlier consent decree. The defendants in *Reeves* took no position as to whether intervention was appropriate or as to the merits of the proposed intervenors' claims: they "simply remained neutral on all of the issues raised by the intervenor's complaint and notified the district court that they would continue to comply with the consent decree until otherwise instructed by the court." 791 F.2d at 1483. After successfully defeating the motion to intervene, the plaintiffs argued that the defendants should share the responsibility for their attorneys' fees because the defendants did not join in the plaintiffs' efforts to defend the consent decree. The Eleventh Circuit rejected this argument reasoning that the defendants had no obligation to defend the consent decree against third-party attacks. Because the defendants had not aligned themselves with the proposed intervenors and

because the intervenors had acted completely independently of the defendants, the court of appeals held that the defendants could not be required to pay the attorneys' fees the plaintiffs incurred in their effort to defeat the intervention and maintain the earlier consent decree. *Id.* at 1484.

▇ Properly considered, *Reeves* represents the appellate court's considered judgment that defendants who are completely removed from the activities giving rise to an expenditure of effort by plaintiffs and who affirmatively stake out a neutral position during the dispute between the plaintiffs and some third party should not be held responsible for the fees incurred by counsel. Here, however, to say that the issues before the Supreme Court were completely independent of any action taken by the Department of Public Safety and that the Department assumed a position of neutrality is to ignore both the reality of the events that led up to Supreme Court's resolution of the issue presented to it and the Department's participation before the Court.

As all of the Justices of the Supreme Court observed, and even the federal government conceded, this court ordered race-conscious relief solely because of "the pervasive, systematic, and obstinate discriminatory conduct of the Department." *United States v. Paradise,* 480 U.S. at 167, 107 S.Ct. at 1064 (Brennan, J., plurality opinion); *id.* at 196, 107 S.Ct. at 1080 (O'Connor, J., dissenting). *See also id.* at 186, 107 S.Ct. at 1074 (Powell, J., concurring) ("racial discrimination had been continued for many years in contravention of repeated decisions of the District Court"); *id.* at 189–94, 107 S.Ct. at 1076–78 (Stevens, J., concurring in the judgment) (characterizing the department's practices as constituting repeated, persistent, and egregious violations of the fourteenth amendment). Almost twelve years had passed from the time that this court had originally condemned the Department's racially discriminatory policies until this court issued the 1983 order that gave rise to the Supreme Court's review. *See Paradise v. Prescott,*

585 F.Supp. 72, 74 (M.D.Ala.1983). During that time, the Department had made little to no progress in desegregating the supervisory ranks. Had the Department shown any initiative or exhibited any compulsion to conform its behavior to law, this court's order would have been unnecessary. Instead, the Department obstinately ignored its obligations under the United States Constitution until such time that drastic remedial relief was required.

Even after this court ordered relief, the Department's position was anything but neutral. First, the Department sought relief in this court by arguing that only the Department of Personnel had the legal authority and trained personnel to design promotional procedures. When this court rejected that argument, the Department sought review before the Court of Appeals for the Eleventh Circuit, which upheld this court's order. *Paradise v. Prescott*, 767 F.2d 1514 (1985) (per curiam). The Depart-

ment then considered petitioning the Supreme Court for a writ of certiorari, but was denied an extension of time to file its petition. However, this had no effect on the Department's ability to participate fully as a party in the Supreme Court proceedings,[4] which the Department did by both filing an extensive brief with the Court seeking to reverse the court of appeals[5] and by presenting arguments that were, in some instances, quite different from those presented by the federal government—for example, the federal government conceded that the Department's promotional policies exhibited a pattern of egregious race discrimination, *United States v. Paradise*, 480 U.S. at 168, 107 S.Ct. at 1065, but the Department maintained that its discriminatory practices were limited only to its hiring policies and not to its promotional policies. *Id.* The Department's suggestion that it was merely an *amicus* is completely without merit.[6]

---

**4.** Rule 19.6 of the Supreme Court Rules provides that:

"All parties to the proceeding in the court whose judgment is sought to be reviewed shall be deemed parties in this Court, unless the petitioner shall notify the Clerk of this Court in writing of petitioner's belief that one or more of the parties below has no interest in the outcome of the petition. A copy of such notice shall be served on all parties to the proceeding below and a party noted as no longer interested may remain a party here by notifying the Clerk, with service on the other parties, that he has an interest in the petition. All parties other than petitioners shall be respondents, but any respondent who supports the position of a petitioner shall meet the time schedule for filing papers which is provided for that petitioner, except that any response by such respondent to the petition shall be filed within 20 days after receipt of the petition. The time for filing such response may not be extended."

Although the Supreme Court has intimated that the purpose of this rule is directed more toward protecting the adjudication of absent parties' rights than as a means for a party to obtain review of a judgment without filing the proper papers, *see Diamond v. Charles*, 476 U.S. 54, 63 & n. 14, 106 S.Ct. 1697, 1704 & n. 14, 90 L.Ed.2d 48 (1986) (interpreting the similarly worded Supreme Court Rule 10.4 applying to cases invoking the Court's appellate jurisdiction), the Court in *Paradise* did address the issues that were raised only by the Public Safety Department and the defendant-intervenors, a class of white officers within the Department.

**5.** *See United States v. Paradise*, 480 U.S. at 153 n. 1, 107 S.Ct. at 1057 n. 1.

**6.** The plaintiffs also rely on the concurring opinion of Justice Blackmun in *Zipes.* In that opinion, Justice Blackmun stated:

"Addressing and adjusting the rights of a third party are parts of the social cost of remedying a Title VII violation. That cost, as well as the costs to the plaintiff of vindicating his or her own rights, would not have existed but for the conduct of the Title VII defendant. I see nothing in the language of the statute or in our precedents to foreclose a prevailing plaintiff from turning to the Title VII defendant for reimbursement of all the costs of obtaining a remedy, including the costs of assuring that third-party interests are dealt with fairly.

"Thus, where an intervenor enters the case to defend third-party interests and the plaintiff prevails, the costs of the intervention, in my view, should presumptively be borne by the *defendant.*"

491 at 767–68, 109 S.Ct. at 2739–40 (emphasis in original). In *Bigby v. Thoele, City of Chicago*, 927 F.2d 1426 (1991), the Seventh Circuit Court of Appeals rejected a similar reliance on Justice Blackmun's concurring opinion. This court adopts the Seventh Circuit's response as its own:

"Just prior to making that statement, however, Justice Blackmun noted that the majority opinion had stated that "the defendant will ... be liable for all of the fees expended by the plaintiff in litigating the claim *against him....*" *Id.* [491 U.S. at 761, 109 S.Ct.] at 2736 (emphasis added), indicating the majori-

## IV.

■ The more difficult question is whether attorneys' fees should be also assessed against the Alabama State Personnel Department. In many respects, the Personnel Department was as much to blame for the circumstances giving rise to this court's 1983 order as was the Department of Public Safety. The Personnel Department was a signatory to both the 1979 and 1981 consent decrees which required the Public Safety Department to develop and implement valid promotion procedures. Had this been done, there would have been no need for the measures this court took to ensure the cessation of the Public Safety Department's discriminatory practices and to remedy the continuing effects of past and present discrimination. However, once this court issued its 1983 order, the Personnel Department neither challenged the order before the Eleventh Circuit nor before the Supreme Court. As a result, the court concludes that it would not be equitable to require the Personnel Department to bear the burden of compensating the plaintiffs for the appellate expenses they incurred before the Supreme Court.

Accordingly, for the above reasons, it is ORDERED:

(1) That the plaintiffs' motion for award of attorneys' fees and expenses incurred during the proceedings before the United States Supreme Court is granted as to defendant Alabama Department of Public Safety and is denied in all other respects;

(2) That the plaintiffs are allowed until August 10, 1992, to submit their brief and evidentiary materials in support of the specific amount of fees and expenses they seek, and that defendant Alabama Department of Public Safety is allowed until August 17, 1992, to respond; and

(3) That counsel for the plaintiffs and defendant Alabama Department of Public Safety shall meet and confer by no later than August 5, 1992, to attempt to agree upon the amount of fees and expenses that should be awarded.

ty's tacit assumption that a Title VII defendant's fee liability would not extend to fees associated with the defense of third party interests. *Id.* [491 U.S. at 765–67, 109 S.Ct.] at 2739. We agree that the majority opinion in *Zipes* indicates that a Title VII defendant's fee liability does not presumptively extend to cover the fees incurred by plaintiffs in litigating third party interests; therefore, we must evaluate the fee request in this case under the terms of the statute to determine whether the Bigby plaintiffs are entitled to recover their fees from the City."
*Id.* at 1429.